## THE STATE ex rel. TIM BIRMINGHAM v. GEORGE E. HACKMANN, State Auditor.
### Mandamus.

**In Banc, December 30, 1918.**

1. **STATE OFFICE: Official Residence.** If the statute fixes no place of residence for a state officer, he has the legal right to maintain his residence anywhere in the State; and if it likewise does not prescribe the place of his office, he can choose the place.

2. ———: ———: **Traveling Expenses.** If the statute contains no requirements as to the place of residence or the place of the office of a state officer, but does say that he shall be paid "all necessary traveling expenses," the State Auditor is without authority to refuse to audit and allow his traveling expenses incurred in traveling, in the performance of his statutory duties, from his residence, in one part of the State, to his office, in another part, including his hotel bills in the city where his office is.

WRIT ISSUED.

*Frank H. Farris* for relator.

(1) It is the duty of the Governor to appoint a State Game and Fish Commissioner who shall hold his office for a term of four years, receive a salary of twenty-five hundred dollars per annum, payable monthly out of the Game Protection Fund. R. S. 1909, sec. 6557. (2) "The Game and Fish Commissioner may provide and maintain a suitable office and may maintain a clerk when necessary. At the end of each calendar month he shall file with the State Auditor an itemized statement under oath, of all sums of money actually and necessarily expended by him in the discharge of his official duties. Such statement shall include office rent, salary of one clerk, salaries and expenses of deputies, and necessary traveling expenses, postage, stationery, fuel and such incidental expenses as may be required. The State Auditor shall draw his warrant for such amount, which shall be paid monthly out of the Game Fund."

R. S. 1909, sec. 6558. (3) The State Game and Fish Commissioner is not among the officers of the State who are required by our Constitution to reside at the capital during their term of office, nor to keep his books and records there. Constitution, art. 5, sec. 1. And there is nothing in the law creating his office and prescribing his duties which requires him to reside at the capital or at any other particular point within the State. Art. 2, chap. 49, R. S. 1909. (4) It is not the province of the State Auditor to interfere with any expenditure of money or the performance of any act that is clearly embraced within the provisions of the law creating the department, the officers thereof, and prescribing the duties and rights of such officers in the creation of expenses and the payment of the same. State ex rel. v. Wilder, 199 Mo. 484; State ex rel. v. Gordon, 245 Mo. 27. (5) In this case the statute creating the office and providing for the compensation of the officers includes his traveling expenses, and the appropriation is made for the payment of his traveling expenses; being thus provided for by law and specific money appropriated for its payment, the officer is entitled to receive the amount of money expended in traveling expenses in the discharge of his duties. It is admitted by the demurrer that the expense incurred by relator was necessary in the discharge of his duties as a public officer, and being necessary and incurred in the line of duty, and being provided for by law, and covered by special appropriation, he is entitled to collect the same. A public officer may collect expenses incurred in the keeping of his office although the statute creating the same and defining his duties does not specifically name the expense incurred. Ewing v. Vernon County, 216 Mo. 693.

*Frank W. McAllister*, Attorney-General, and *S. E. Skelley*, Assistant Attorney-General, for respondent.

(1) Respondent contends that since the statute is silent on the subject, relator may establish his office at the place of his residence, or at any other point within the State; that the point where said office is

established must be construed as "headquarters" or "base of operations," so to speak, of the department; that it was not the intention of the Legislature that the incumbent in said office should be entitled to reimbursement for his personal expenses incurred while at "headquarters;" that if he chose, as has relator in this instance, to establish his office at a place other than his residence he cannot charge and be reimbursed for personal expenses incurred while there; that by the term "traveling expenses" as used by the Legislature, it is intended to include only necessary expenses incurred while away from "headquarters," in the discharge of the duties of the office. (2) Respondent further states that in view of the undisputed rule that a public official is not entitled to any compensation, fee, or allowance, not clearly given him by statute, he was not only justified in so doing, but it was his duty to refuse to allow and draw his warrant for the payment of the items of expense claimed by relator herein.

GRAVES, J.—This is an original proceeding by mandamus. The facts are few and simple and stand admitted, in as much as the respondent rests his case upon a demurrer to relator's petition, which stands for the alternative writ.

Relator is the State Game and Fish Commissioner of Missouri. Respondent is the State Auditor. Relator, at the time of his appointment to the office of State Game and Fish Commissioner, resided at the city of St. James in the county of Phelps, and thence forward has continued to reside there. He established no residence in Jefferson City, but did establish an office there, in which is maintained a clerk and an office force. Once or twice per month it became necessary for relator to come from his home to his office to go over the expense accounts of the office, and the expense accounts of his divers deputies in the State, to the end that he might certify the same to the State Auditor for payment. While doing this work, he charged his hotel bills while at Jefferson City in his accounts as expenses

chargeable to the State. Those items for a number of months the State Auditor, respondent herein, refused to allow to relator, and continues to so refuse to allow the same. By our writ of mandamus it is sought to compel the Auditor to audit and allow these items. For the five months involved in this action these items aggregate $58.35, but the suit will determine the status of these items and their allowance throughout the term of relator. The appropriation is ample out of which they may be paid, if valid. Further facts may well be left to the opinion.

I. We start with the proposition that there is no law, either statutory or constitutional, which fixes the residence of the State Game and Fish Commissioner. So far as the law is written, this official enjoys the privilege of residing wherever he pleases within the State. Some are not so fortunately situated. [Constitution of Missouri, art. 5, sec. 1.] The statute creating relator's office and prescribing the duties thereof nowhere fixes his place of residence, and he is permitted to escape the privilege of having the merchants and tradesmen of the Capital City adjust his living expenses to the size of his salary. Respondent (under the constitutional provision supra) is not so fortunate. Relator had the legal right to maintain his residence at St. James. He likewise had no restrictions upon the place of locating his office. Quite naturally he saw fit to locate it at the seat of government, but this did not compel him to change his residence.

*Official Residence.*

II. By Section 6558 such officer "may provide and maintain a suitable office, and may maintain a clerk when necessary." The same section also further provides:

"At the end of each calendar month the said Game and Fish Commissioner shall file with the State Auditor an itemized statement, under oath, of all sums of

money actually and necessarily expended by **Traveling Expenses.** him in the discharge of his official duties. Such statement shall include office rent, salary of one clerk at the rate of two and one-half dollars per day while said clerk is employed, salaries and expenses of deputies while traveling under special orders as hereinafter provided all necessary traveling expenses, postage, stationery, fuel and such incidental expenses as may be required. The State Auditor shall draw his warrant for such amount, which shall be paid monthly out of the Game Fund.''

The duties of such officer under Article 2 of Chapter 49, Revised Statutes 1909, are numerous and varied, and chief among them is, that he is to see that the state game laws are enforced, [Sec. 6562, R. S. 1909.] To this end he is empowered to serve warrants and make arrests. [Sec. 6565, R. S. 1909.] In fact, under this law (Art. 2, chap. 49, supra) his duties are so numerous and various as to require his presence at times in the different portions of the State. Without aid he could not meet all the obligations of the law, and the Legislature, so knowing, has provided for many deputies. [Sec. 6566, R. S. 1909.] Those deputies are allowed a *per diem* and expenses, and their accounts must be examined and approved by the Commissioner. [Sec. 6566, supra.]

The expenses involved in this action were expenses incident to the examination and approval of these expense accounts, as well as other expense accounts of the office mantained by the relator. If either the law or the Constitution required of relator a residence at the seat of government, and the law (as it does not) required his office to be maintained at the seat of government, there would be excuse for the action of the State Auditor in this case. But as it is there is absolutely no excuse for the refusal to audit and allow these expenses, which are amply provided for both by the law creating the office and prescribing the duties, and the Appropriations Act covering the expense of the office.

A case as plain as this should have been disposed of without recourse to the courts. If the State Auditor had any doubts (although we can see no room for such), the law makes the Attorney-General his legal adviser, and we are loth to believe that the plain and simple issues of this case are here under the advice of the Attorney-General. The law furnishes to state officials this legal adviser to the end that the courts might be relieved of cases in which there are no merits. Our alternative writ of mandamus should be made absolute, and it is so ordered. All concur.