# MARCH, 1929

S. H. TERRELL, COMPTROLLER, v. A. H. KING.

No. 4890. Decided March 7, 1929.
(14 S. W., 2d Series, 786.)

238

*Claude Pollard,* Attorney-General, and *H. Grady Chandler* and *Allen Clark,* Assistants, for appellant.

Senate Concurrent Resolution No. 5, passed by the Regular Session of the Fortieth Legislature of Texas, which created the Tax Survey Committee to be composed of three members of the Senate appointed by the Lieutenant Governor, four members of the House of Representatives appointed by the Speaker of the House, and eight private citizens appointed by the Governor, each to receive $10 per day and expenses, violates no provision of the Constitution. The court, therefore, erred in overruling defendant's general demurrer, and in granting an injunction restraining the Comptroller from issuing warrants to pay the members of the Legislature serving on said committee for their services and expenses. Constitution, Article 3, Sections 18, 24, 30, 44; Constitution, Article 16, Sections 6, 17, 33, 40; Brown v. Galveston, 97 Texas, 1; Connelly v. Daughters of Republic, 164 S. W., 26; Opinion of Attorney General of Texas, March 15, 1909; Opinion of Attorney General of Texas, May 10, 1915; Opinion of Attorney General of Texas, June 9, 1915; Branham v. Lange, 16 Ind., 497; Bank v. Worth, 117 N. C., 146; Ex Parte Caldwell, 55 S. E., 910 (W. Va.); In Re Davis, 49 Pac., 160

(Kan.) ; Sherman v. George, 29 Pac., 356 (Ore.) ; United States Constitution, Art. 1, Sec. 3, Subdiv. 2; Sergeant's Constitutional Law, p. 304; Doyle v. Raleigh, 89 N. C., 133, 45 Am. Reports, 677; Groves v. Barden, 169 N. C., 8, 84 S. E., 1042.

Senate Concurrent Resolution No. 5, passed by the Regular Session of the Fortieth Legislature of Texas, which created the Tax Survey Committee to be composed of three members of the Senate appointed by the Lieutenant Governor, four members of the House of Representatives appointed by the Speaker of the House, and eight private citizens appointed by the Governor, each to receive $10 per day and expenses, violates no provision of the Constitution. The court, therefore, did not err in refusing to grant an injunction prohibiting the Comptroller of Public Accounts from issuing warrants to pay the eight private citizen members of the Tax Survey Committee a per diem and expenses for serving on said committee. Same authorities.

Senate Concurrent Resolution No. 5 of the Regular Session of the Fortieth Legislature authorizes the Comptroller to issue warrants for expenditures made by the Tax Survey Committee, including a per diem and expense of members of the committee.

*T. R. Odell* and *George Mendell, Jr.,* for appellee.

The Court did not commit error in overruling defendant's general demurrer to plaintiff's amended petition, as plaintiff's amended petition stated a cause of action. Golden v. Odiorne, 249 S. W., 824, 56 Fed. Rep., 892; Weatherford Ry. v. Granger, 85 Texas, 575; Robinson v. Davenport; 40 Texas, 341; Novencamp v. Union Stock Yards, 107 Texas, 425.

The Court did not commit error in granting the injunction restraining the defendant from issuing any warrant upon the Treasurer of the State of Texas in payment for the services and expenses of Senators A. E. Wood, Edgar E. Witt and A. J. Wirtz and Representatives Claude D. Teer, J. W. Stevenson, Adrian Pool and C. E. Nicholson as members of the Tax Survey Committee. Article III, Sections 3, 4, 18, 24, 30, 31, 32, 51, Constitution of Texas; Terrell v. Middleton, 187 S. W., 367; Article XVI, Sections 6, 17, 30, Constitution of Texas; Lillard v. Freestone County, 57 S. W., 338; Ruling Case Law, Vol. 6, Secs. 34 and 42; Ex Parte Meyer, 207 S. W., 104; Cooley, Constitutional Limitations, 7th Ed., 77, 227–229.

The public funds of the taxpayers cannot be appropriated by the Legislature by means of a resolution, to pay claims of private citizens, appointed on the Tax Survey Committee by the Governor of Texas. To pay such claims would violate Sections 44 and 51 of Article III of the Constitution. Article VIII, Section 6, Constitution of Texas; Article III, Sections 30, 31 and 32, Constitution of Texas; Dunwoody v. United States, 22 Ct. of Claims, 269–80; Opinion Attorney General, Vol. for 1916–1918, p. 120.

The contingent expense fund is a lump sum set apart by the Legislature to pay necessary expenses in the operation of the Legislature; the Tax Survey Committee is no part of the Legislature and is not necessary in its operation, and the payment of the public funds to the members thereof for any purpose out of the contingent expense fund, or any other fund, in the absence of an appropriation made in accordance with the terms of the Constitution, Sections 30, 31 and 32 of Article III, is illegal and void.

Mr. Justice GREENWOOD delivered the opinion of the court.

The certificate in this case presents for determination by the Supreme Court questions of the gravest import relative to the constitutional exercise of the legislative power of the State. The certificate reads as follows:

"Appellant is the Comptroller of the State of Texas. Appellee is a citizen and taxpayer and resides in Throckmorton County.

"By Section 1, Chapter 1 of the General Laws of the Regular Session of the 40th Legislature, the sum of $185,000.00 was appropriated out of the general revenue to pay mileage and per diem of members, salaries and per diem of officers and employees, and contingent expenses of that session.

"For convenience we here quote in full Senate Concurrent Resolution No. 5 (pages 482–485 of the Laws of the Regular Session 40th Legislature) approved by the Governor February 10, 1927:

" 'Whereas, the tax laws of Texas are a mass of indiscriminate enactments passed at various times and based on the then existing conditions and by reason of the exigencies at the time, the same constitute a mass of patch work and were not the result of a discriminating study of the conditions or industries of Texas or of the comparative revenue returns of the same, and do not take into consideration the changes and development of subsequent years; and,

" 'Whereas, there is a very general feeling that, as applied to present conditions, there exists many discriminations in the tax

burdens as borne by the citizens and industries of the State, and a very general demand for the equalization of taxes in order that a reality be made of that provision in our Constitution that "taxes shall be equal and uniform"; and,

" 'WHEREAS, owing to the great importance and magnitude of this subject it is impractical and impossible at a session of the Legislature, by reason of the shortness of same and the necessity of considering so many other matters of legislation, and the lack of accurate information upon which to base a fair and impartial recommendation, to work out comprehensive and fair legislation, to the end that tax burdens be equalized; therefore be it

" 'RESOLVED BY THE SENATE OF TEXAS, THE HOUSE OF REPRESENTATIVES CONCURRING :—

" 'That a committee of fifteen persons, to be known as The Tax Survey Committee, be created, and the duties thereof be provided as follows, to-wit:

" 'The President of the Senate shall appoint as members of this committee three (3) members of the Senate, and the Speaker of the House of Representatives shall appoint as members of this committee four (4) members of the House; and the Governor of Texas, as members of this committee, shall appoint eight public spirited and capable persons who are private citizens of Texas, at least one of the persons to be appointed by the Governor to be a man who has made a special study of government and taxation and be well versed in the principles of taxation; and the remaining members to be appointed by the Governor to be selected from different vocations and from different sections of the State.

" 'The said Tax Survey Committee shall meet within ten days from the time its membership is completed, at a time and place to be designated by the Governor, and shall organize, by electing one of its members Chairman and another Secretary, and such other officers as it may deem necessary.

" 'The Committee shall adopt such rules and regulations as necessary to carry out the provisions of this resolution.

" 'Said Committee shall be provided with a Committee Room in the Capitol in Austin and its sessions shall be open to the public, except at such times as the Committee may, by a majority vote, determine to hold executive session.

" 'Said Committee shall begin its work following the adjournment of the Regular Session of the 40th Legislature unless a Special Session of said Legislature shall be called within ten days after the

adjournment of said Regular Session, in which event it shall begin its investigation following the adjournment of said Special Session. Said Committee shall continue its sessions and investigations as may be determined by a majority vote of said Committee, and until its work has been completed; however, it shall conclude its investigations and make its report to the Regular Session of the 41st Legislature or to some Special Session of the 40th Legislature called by the Governor for the purpose of receiving and considering report of said Committee.

" 'The Committee herein provided shall have free access to all books and records in the several departments of the State government and of any other political subdivision of the State.

" 'Said Committee shall have power to subpoena witnesses to appear before it at any time or place it shall decide and furnish to it such information as such witnesses have, and to issue subpoena for records, books, papers and other documents, and to swear said witnesses; to reduce testimony to writing or typewriting; and to pay said witnesses the fees paid them in criminal cases in the District Court.

" 'Said Committee shall also have the power to require from all persons, firms and corporations in this State, such information as it may desire with reference to the properties and tax burdens being borne by same.

" 'Said Committee shall have the power to issue such process as necessary to compel the attendance of witnesses or production of books, records or other information as may be desired by it in the proper discharge of its duties.

" 'The Committee shall make a careful study of the subject of revenue and taxation with special reference to the problems presented in Texas and the comparative burdens borne, and shall investigate and study the systems of raising revenue and administering same in other States. Said Committee shall secure information as to Texas and as to such other States desired by it as to the taxable values of said States, the aggregate income of individuals and corporations within each of the same, the systems of taxation in same, the method of financing the educational and eleemosynary institutions and departments of government, and other information relative to the wealth and resources of each of said States and the methods employed for securing revenue for the maintenance of such institutions and the pro rata and comparative cost of educational and eleemosynary institutions, and other departments of government.

" 'Said Committee shall secure information as to Texas and as to such other States as it may find desirable with reference to the amount of taxes now being paid by the various classes of property and industries of such States so as to be able to determine the comparative tax burdens being borne in Texas and in other States by the various classes of property and industries therein.

" 'Said Committee shall have power and authority to employ and compensate all necessary experts, investigators, stenographers and other clerical help and it shall be the duty of said Committee to make and keep a record of its investigations and of all funds expended by it and to whom paid and the amounts thereof. It shall not be the duty however of said Committee to keep a stenographic report of all information or investigations made by it but it shall have the authority to keep such record as it may deem advisable.

" 'The report of said Committee, as herein provided, shall make such recommendations, as to legislation, as may, in its judgment, be necessary to secure sufficient funds for a proper and economical administration of the departments of government, educational and eleemosynary institutions and as will, as nearly as possible, fairly and equitably and impartially distribute such burdens against its citizens and their property and make a reality of the Constitutional provision that "taxes shall be equal and uniform."

" 'Members of said Committee shall each receive as compensation the sum of $10.00 per day for each day they actually serve, together with railroad fare, hotel, telegraph, telephone, postage and express expenses incurred in the discharge of their duties, and it shall be authorized and empowered to purchase such stationery and other supplies as may be necessary for the discharge of their duties.

" 'There is hereby appropriated from the contingent fund of the 40th Legislature, the sum of $25,000.00, or so much thereof as may be necessary for the purpose of defraying the compensation and expenses of the Committee hereby created, including the publication of 2000 copies of the committee report, and the distribution of same to the citizens of Texas.

" 'Provided further that all expenditures of such Committee shall be made upon the sworn account of the persons entitled to such pay, when approved by the Chairman and Secretary of said Committee. The Secretary shall file with the State Comptroller of Public Accounts a statement showing in detail the expenditures made by such Committee and the amounts and to whom all payments were made.'

244

"The following constituent members were appointed in compliance with the terms of this resolution: From the Senate: Senators A. E. Wood, A. J. Wirtz, and Edgar E. Witt; from the House: Representatives Claude D. Teer, J. W. Stevenson, Adrian Pool, and E. C. Nicholson; private citizens appointed by the Governor: O. B. Colquitt, A. P. Duggan, A. C. Willacy, J. M. Henderson, Dr. E. T. Miller, J. A. Kemp, Jas. Callan, and J. M. West; each of whom accepted the appointment. The Committee was organized, has functioned, and warrants covering compensation and expenses have been regularly issued up to the filing of this suit. The labors of the Committee have not been completed.

"Appellee brought this suit on August 25, 1927, against appellant, in his official capacity, seeking to enjoin him from issuing any further warrants in payment of the compensation and expenses of the Committee and its members. The cause was tried to the court without a jury and final judgment was rendered perpetually enjoining appellant and his successors in office from issuing any warrant or other order or demand upon the Treasurer of the State in payment of any services, expense account, or claims of any kind whatever in favor of the several members of the Committee who were members, respectively, of the Senate or House of Representatives, but denying any injunctive relief with reference to the compensation and expenses of the eight members of the Committee who are private citizens.

"The Comptroller has brought the case to this court by appeal, attacking the trial court's judgment in so far as it granted the injunctive relief prayed for; and the appellee has cross assigned error, attacking that portion of the trial court's judgment refusing to enjoin the issue of warrants covering compensation and expenses of the private citizen members of the Committee.

"Appellee contended in his petition below, and now urges, that Senate Concurrent Resolution No. 5 is unconstitutional and void for the following reasons:

"'1. Because it provides for seven of its members to be members of the same legislature which created it, and to receive additional emoluments of office in contravention of the provisions of Article III, Section 18 of the Constitution of Texas.

"'2. Because it permits and authorized the seven members of the Legislature, who are members of the Committee, to receive compensation in excess of $5.00 per day for sixty days and $2.00 per day thereafter, while the Legislature is in session, and permits and authorizes the expenditure by them for mileage and other ex-

penses, which is in direct conflict with the provisions of Article III, Section 24 of the Constitution of Texas.

" '3. Because the appropriation of public funds cannot be legally made by Resolution, for the purpose of paying private citizens for any claim real or pretended, in the absence of a pre-existing law; that the paying of private citizens out of the public funds under alleged contingent expenses of the 40th Legislature is in violation of Article III, Section 44 of the Constitution.

" '4. Because said 'Resolution attempts to appropriate the public funds by resolution and not by law, in contravention of Article III, Section 30 of the Constitution.

" '5. Because said Resolution seeks to pledge the credit of the State to the payment of claims for private and individual purposes in violation of Article XVI, Section 6 of the Constitution.

" '6. Because the public funds are being expended under the terms of the Resolution in the absence of a specific appropriation for that purpose, in contravention of Article VIII, Section 6 of the Constitution.

" '7. Because the members of the 40th Legislature serving on said Committee hold their respective offices as such members of the Legislature until their successors shall be duly qualified; that none of them have resigned as members of the 40th Legislature, and they are now receiving compensation for holding two separate and distinct offices in contravention of Article XVI, Sections 17 and 33, and in violation of Section 40 of said Article.

" '8. Because the compensation provided for in said Resolution, for its members, is a grant of public money to individuals, not authorized by law, and is contrary to Article III, Section 51 of the Constitution.

" '9. Because it is a diversion of the public funds, to use the contingent expense fund of the 40th Legislature to pay for the alleged services of private citizens, serving on a legislative committee long after the adjournment of the Legislature for which the contingent fund was to be used and expended, and created not by law, but by Resolution; that the provisions for such expenditures are not authorized or contemplated by law, and are wholly contrary to good public policy, and an economical administration of the government.'

"Because of the public importance of the controversy thus raised and the evident necessity of having a judicial determination thereof by the Supreme Court as soon as practicable, we deem it advisable to certify for your decision the following questions:

"1. Did the trial court commit error in its judgment and holding to the effect that Senate Concurrent Resolution No. 5 is unconstitutional and void in so far as it appropriates money out of the named contingent expense fund for the payment of compensation and/or expense of the legislative members of the Committee?

"2. Did the trial court commit error in its judgment and holding to the effect that Senate Concurrent Resolution No. 5 was valid in so far as it appropriated money out of said contingent fund for the payment of compensation and expenses of the members of the Committee who are private citizens?"

The Constitution of Texas provides for a Senate of thirty-one members and for the Lieutenant Governor to be President of the Senate, and provides for a House of Representatives of not over one hundred and fifty members, one of whom shall be elected Speaker. Section 2, Article 3, and Section 16, Article 4. The legislative power of the State is vested in the Senate and House of Representatives, together constituting "The Legislature of the State of Texas." Section 1, Article 3, Constitution. The Senate and the House are separate bodies, charged with duties, most of which are to be performed by each House separately, despite the fact that the concurrence of both Houses is requisite to enact laws or certain resolutions. In declaring, in Section 11 of Article 3, that "each House may determine the rules of its own proceedings," the Constitution plainly delegates to each House the choice of methods for the most advantageous use of its functions in the exercise of the State's "legislative power", which Mr. Cooley defines as "authority, under the Constitution, to make laws, and to alter and repeal them." Cooley's Constitutional Limitations (8th Ed.), page 183. Having such choice of methods each House is fully authorized to appoint committees to make investigations and conduct inquiries and gather information with respect to the operation of subsisting laws and the need for their improvement, alteration, or repeal. McCulloch v. Maryland, 4 Wheaton, 409. Not only does the Constitution, in the grant of the rule making power, authorize either House to name such committees as it may deem necessary or proper for purposes of investigation and inquiry, when looking to the discharge of any legitimate function or duty of such House, but the Constitution goes further and makes consideration by a committee a condition precedent to the enactment of any law. Section 37, Article 3.

Since each House continues in existence after the end of a legislative session, as determined in Ferguson v. Maddox, 114

Texas, 93, 95, 96, and since each House is invested with independent responsibilities and duties and is the sole judge of its own rules of procedure, we think the power of each House or of the Legislature cannot be denied to name committees to sit either during sessions of the Legislature or in recess for the purpose of gathering information considered requisite or helpful to enlightened or efficient legislation.

The authority of each House to use legislative committees of inquiry and investigation is affirmed in Cooley's Constitutional Limitations, 8th Edition, at page 275, where the author says:

"Each house must also be allowed to proceed in its own way in the collection of such information as may seem important to a proper discharge of its functions, and whenever it is deemed desirable that witnesses should be examined, the power and authority to do so is very properly referred to a committee, with any powers short of final legislative or judicial action as may seem necessary or expedient in the particular case."

The brother of former Attorney General Daugherty refused to appear and testify before a committee of the U. S. Senate authorized to sit after adjournment of Congress to obtain information for purposes of future federal legislation. He was thereupon attached on a warrant authorized by the Senate to compel his appearance and testimony. On habeas corpus, he was ordered discharged by the United States District Court. After "earnest and prolonged consideration," the appeal from the order of the District Court was determined by the Supreme Court of the United States in an opinion of great force and clarity, delivered by Mr. Justice Van Devanter, wherein the Supreme Court, in reversing the order of the court below, upheld the power of Congress and of either house, under constitutional provisions altogether similar to those in the Constitution of Texas, to appoint committees and to compel witnesses to appear and testify before such committees, whenever deemed necessary or proper in the efficient exercise of congressional legislative power. McGrain v. Daugherty, 273 U. S., 135, 71 L. Ed., 580, 50 A. L. R., 1.

In this opinion, it is shown that authority to pursue investigations and inquiries through committees has been regarded as an incident of full legislative power by the Parliament of Great Britain, by the Legislatures of the American Colonies, by both houses of Congress of the United States, and by most of the State Legislatures. In up-

holding this long continued exercise of authority by either house of congress, the Court uses this convincing language:

"A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information—which not infrequently is true—recourse must be had to others who do possess it. Experience has taught that mere requests for such information are unavailing, and also that information which is volunteered is not always accurate or complete; so some means of compulsion are essential to obtain what is needed. All this was true before and when the Constitution was framed and adopted. In that period the power of inquiry—with enforcing process—was regarded and employed as a necessary and appropriate attribute of the power to legislate—indeed, was treated as inhering in it. Thus there is ample warrant for thinking, as we do, that the constitutional provisions which commit the legislative function to the two houses are intended to include this attribute to the end that the function may be effectively exercised." McGrain v. Daugherty, supra.

Our conclusion that the Legislature or either house possesses authority to order committee investigations and inquiries in order to get information requisite to the right use of legislative power is but an application of the principle often recognized by this Court that a constitutional grant of power includes "authority to do all things necessary to accomplish the object of the grant." Smisson v. State, 71 Texas, 235; T. C. Ry. Co. v. Bowman, 97 Texas, 422; Terrell v. Sparks, 104 Texas, 197.

Having decided that the tax survey committee was an appropriate instrumentality for the effective exercise of the State's legislative power, we see no reason to doubt that the representatives and senators on the committee were serving thereon in their official capacities as members of the Legislature. There seems no tenable ground for distinction between the essential functions of this committee and those of the ordinary legislative committees serving while the Legislature is in session.

In the case of McGrain v. Daugherty, supra, the Supreme Court of the United States was required to determine the official status of members of the United States Senate while serving on an investigating committee. In that case, the witness Daugherty was held under a warrant issued by order of the Senate on an unsworn report of the senatorial investigating committee. One of the grounds on which

the witness sought his discharge was that the warrant for his arrest was void because violative of the Fourth Amendment to the Constitution of the United States providing that "no warrants shall issue but upon probable cause supported by oath or affirmation." In refusing to release the witness on this ground, the Court said:

"*The committee was a part of the Senate and its members were acting under their oath of office as senators.* * * * In legislative practice committee reports are regarded as made under the sanction of the oath of office of its members; and where the matters reported are within the committee's knowledge and constitute probable cause for an attachment such reports are acted on and given effect without requiring that they be supported by further oath or affirmation. * * * We think the legislative practice fortified as it is by the judicial practice, shows that the report of the committee—which was based on the committee's own knowledge and *made under the sanction of the oath of office of its members—was sufficiently supported by oath to satisfy the constitutional requirement.*"

The resolution creating the tax survey committee provides that "members of the committee shall each receive *as compensation* the sum of $10.00 per day for each day actually served, together with railroad fare, hotel, telegraph, telephone, postage and express *expenses* incurred in the discharge of their duties."

Section 24, of Article 3, of the Constitution of Texas reads:

"The members of the Legislature shall receive from the public treasury such compensation for their services as may, from time to time, be provided by law, not exceeding five dollars per day for the first sixty days of each session; and after that not exceeding two dollars per day for the remainder of the session; except the first session held under this Constitution, when they may receive not exceeding five dollars per day for the first ninety days, and after that not exceeding two dollars per day for the remainder of the session. In addition to the per diem the members of each House shall be entitled to mileage in going to and returning from the seat of government; which mileage shall not exceed five dollars for every twenty-five miles, the distance to be computed by the nearest and most direct route of travel by land, regardless of railways or water-routes; and the Comptroller of the State shall prepare and preserve a table of distances to each county seat, now or hereafter established, and by such table the mileage of each member shall be paid; but no member shall be entitled to mileage for any extra session that may be called within one day after the adjournment of a regular or called session."

By the foregoing Article the Legislature is forbidden to provide any greater *compensation* for the services of the members of the Legislature than the stated per diem and mileage. Save as measured by duration of sessions, regular or called, no warrant can be found in the Constitution for the payment of per diem compensation to members of the Legislature. The constitutional provision for per diem compensation is "not exceeding five dollars per day for the first sixty days *of each session;* and after that not exceeding two dollars per day for the remainder *of the session."* Moreover, the Article makes plain that for such per diem and mileage as the Legislature may prescribe, not to exceed the stated maximums, the member is required to attend the sessions at the seat of government and to perform *all* duties of his office. So much of the resolution is therefore in contravention of Section 24 of Article 3 as undertakes to provide that the members of the committee from the House and Senate shall receive *as compensation* the sum of ten dollars per day for each day they serve.

The Supreme Court of Appeals of Virginia considered the claim of members of a board of county supervisors to extra compensation for work on committees, under a statute fixing their compensation at $3.00 per diem and five cents for each mile traveled in going to and from the place of meeting. In disapproving the supervisors' claim for extra compensation for work performed on committees, the Court quoted with approval, first from Dillon on Municipal Corporations, Vol. 1, Sec. 233, and then from Mechem on Public Officers, Sec. 862, as follows:

"It is a well-settled rule that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services."

"Neither can he recover extra compensation for incidental or collateral services which properly belong to, or form a part of, the main office. An express contract to pay such extra compensation, or an express allowance of it, is void."

The Court declared that the principles thus enunciated by Dillon and Mechem "are by universal consent thoroughly established throughout this country." Johnson v. Black, 103 Va., 491, 68 L. R. A., 271, 106 Am. St., 890.

In State ex rel. Griffith v. Turner, 117 Kan., 755, 233 Pac., 510, the Supreme Court of Kansas declared:

"The Constitution fixes the compensation of members of the legislature at $3 per day, and provides that such compensation shall not be more than $150 each for each regular session, nor more than $90 each for each special session. This compensation, fixed by the Constitution, cannot be increased. Any law which in any way, either directly or indirectly, increases the compensation of any member of the legislature, must be held invalid."

Deciding that a councilman, by accepting his office undertakes to perform *all* its duties, the Supreme Court of Washington said:

"As in other legislative bodies, much of the work is performed by committees; and when a member is serving on a committee of the council he is only discharging the ordinary duties of his office, and is not entitled to extra compensation therefor. Nor is the amount of time or labor required to properly discharge the duties of a public office material. If necessary the public is entitled to his whole time. He cannot be compelled to retain his office longer than he desires; and, if the salary is inadequate, or the duties of the office require more time than he can afford to devote to them, he is at liberty to resign. Neither is it material that the amount claimed as extra compensation is a reasonable one for the services performed. When the compensation is fixed by law, nothing more can be claimed, whether the amount so established is reasonable or unreasonable." Tacoma v. Lilis, 4 Wash., 806, 18 L. R. A., 375.

It may be noted that even if we could hold that the members of the Legislature were constitutionally serving on committees of investigation and inquiry otherwise than by virtue of their offices as representatives and senators, still they would be debarred by the Constitution from the receipt of *compensation* for their services as committeemen. Section 33, Article 16, of the Constitution mandatorily forbids accounting officers of Texas from either drawing or paying any warrant, for *salary or compensation* as agent, officer, or appointee, to any person, who at the time holds an office of honor, trust or profit under this State, except as specified in the Constitution. The office of representative or senator is an office of honor, trust and profit under this State, and it does not come within the exception.

The resolution we are considering provided that the members of the Legislature on the committee, like all other members, should receive not only a specified *compensation,* which we have shown was forbidden by the Constitution, but also certain enumerated *expenses* to be incurred in the discharge of their duties, to-wit: railroad fare,

hotel, telegraph, telephone, postage and express charges. We do not think the resolution was designed to provide reimbursement for any railroad fare or hotel bills expended or incurred, in going to or from the capital, during a session of the Legislature, or in residing at the capital during a session of the Legislature. So construing the resolution, we regard as valid the provision it makes for the expenses of the legislative members of the committee.

Since legislative committees of inquiry and investigation functioning at points remote from the capital or functioning at the capital between sessions of the Legislature, may be essential to the effective exercise of the State's legislative power, we must imply power on the part of the Legislature to meet the necessary expenses of such committees. For, since there is no express provision to meet such expenses, this great power of the State—entrusted by the people to their legislators—would otherwise fail. This could not have been the intent of the framers of the Constitution.

It is manifest that certain expenditures must be made by the State, in the way of legislative expenses, or the grant of legislative power could never be effectually exercised. No one would question legislative disbursements for comfortable assembly halls and committee rooms, or for clerks, stationery, etc. Within the same category of legitimate expenses of the Legislature or of either House comes reimbursement to members for actual expenses reasonably incurred in order to perform duties devolving on duly authorized committees of the Legislature or of either House when such committee members are called to other points than the capital or when called to the capital otherwise than during the sessions of the Legislature.

In holding void an act of the Legislature of Oklahoma, which undertook to make an allowance to members for hotel rooms and meals while at the capital attending sessions of the Legislature, under a constitutional provision forbidding other compensation for members than $6.00 per diem and mileage of ten cents per mile, the Supreme Court of Oklahoma was careful to say:

"What are proper legislative expenses, in order to enable the body to function as not only a lawmaking, but an inquisitorial, body, and whatever amount in its judgment is necessary therefor, under the prevailing conditions of life, is a matter within the determination of the legislature, and over which the courts can and would exercise no control. But as pointed out, supra, the section of the Oklahoma Constitution fixing the compensation is followed all but immediately by a section which requires that the sessions of the legislature be

held at the capital, thus making it clear that the compensation allowed is in view of the fact that the members must serve at the capital. This, however, cannot be construed or held in anywise to impair the discretion of the legislature in allowing expenses in the event, in its judgment in the exercise of any of its powers, legislative or inquisitional, it, or any of its members as committees * * * should deem it advisable or expedient to make investigation that required their leaving the capital." Dixon v. Shaw, 122 Okla., 211, 253 Pac., 500, 50 A. L. R., 1237.

In 46 Corpus Juris, at page 1027, Section 266 (b), on the subject of constitutional prohibitions against increases in the compensation of public officers, it is stated:

"Appropriations to public officers not intended for the personal benefit of the officer to whom the allowances are made, but for the incidental expenses of the office, are not within such a prohibition, but the prohibition cannot be evaded by the allowance of an amount greater than is reasonably necessary."

The Supreme Court of Michigan quoted with approval the declarations in 29 Cyc. 1427, 1429, as follows:

"Where the *compensation* is fixed by the Constitution, or where there is a constitutional provision prohibiting such change during the term of an incumbent, no change of salary during such term is permissible, and, where a similar provision is contained in a statute, the powers of municipal corporations are subject to the same limitation. * * * Such limitations do not affect *provision for expenses*, except that use may not be made of a power to increase an allowance for expenses so as to increase the compensation received by an officer." Ware v. Battle Creek, 204 Mich., 471, 167 N. W., 891, L. R. A., 1918 E, 674.

The New York Court of Appeals, in the case of People ex rel. Follett v. Fitch, 145 N. Y., 262, in which the Court had the benefit of a brief from Mr. Elihu Root, determined that a legislative act for reimbursing judges their traveling expenses when required to preside in districts other than that of their residence, "does not deal with compensation for services", but, on the contrary, simply provides reimbursement for a proper court expense. To like effect see: Kirkwood v. Soto, 87 Cal., 394; Corbett v. State Board of Control, 188 Cal., 289, 204 Pac., 824; Fergus v. Russel, 270 Ill., 304; Peabody v. Forest Preserve District, 320 Ill., 454; State v. Hackmann, 275 Mo., 47, 204 S. W., 513, 207 S. W., 498, 276 Mo., 600, and 208 S. W., 445.

The fact that some members of the committee were to be private citizens did not invalidate the resolution. The Legislature was clearly empowered to appoint a committee with authority to employ all outside help or counsel needed to accomplish the purposes of the proposed investigation and inquiry. Just as clearly was the Legislature authorized to create a commission of non-members to investigate all matters of taxation referred to in the resolution and to report findings and recommendations to a subsequent session of the Legislature. Interstate Commerce Commission v. Brimson, 154 U. S., 474, 38 L. Ed., 1056; People ex rel. Bender v. Milliken, 185 N. Y., 35. No less effect should be given to the designation of outside experts by the Governor, by direction of the Legislature, than would be given to their designation directly by the Legislature or its committee duly authorized. Viewing the resolution as a whole, in the light of its obvious intent, it provided for a committee which the Legislature was authorized to create in the exercise of its constitutional legislative power.

The Legislature having regularly enacted a law making an appropriation for its contingent expenses, a resolution of both houses, approved by the Governor, was an appropriate and constitutional method to direct the expenditure of a portion of the appropriation in financing a legislative committee which was lawfully created.

It is no longer an open question in Texas that a joint resolution of both houses, approved by the Governor, reflects the command and will of the State in one of the modes prescribed by the Constitution and is as binding as a statute. Since the tax survey commitee was to function only temporarily, a resolution of both houses, approved by the Governor, was the most appropriate method by which to create the committee and define its duties and finance its operations. Section 15, Article 4, Constitution; 2nd Bouvier's Law Dictionary (3rd Revision), 1704; State v. Delesdenier, 7 Texas, 96; Franklin v. Kesler, 25 Texas, 142; Weekes v. Galveston, 51 S. W., 547, wherein writ of error was denied, Conley v. Texas Division of U. D. of the Confederacy, 164 S. W., 26.

We answer to Question No. 1:

The trial court erred in its holding to the effect that the resolution was unconstitutional and void in so far as it directed the payment of money out of the Legislature's contingent expense fund for the *expense* of the legislative members of the committee; but the trial court did not error in its judgment to the effect that the resolution was unconstitutional and void in so far as it directed the payment

of money out of said fund for *compensation* to the legislative members of the committee.

We answer to Question No. 2:

The trial court did not err in its holding to the effect that the resolution was valid in so far as it directed the payment of money out of the Legislature's contingent expense fund for compensation and expenses of the members of the committee who were not members of the Legislature.

Chief Justice Cureton not sitting.