THE ATTORNEY GENERAL
OF TEXAS



PRICE DANIEL
ATTORNEY GENERAL

August 31, 1951

Hon. R. C. Lanning, Chairman
State Board of Control
Austin, Texas               Opinion No. V-1269.

                            Re: Whether the State Board
                                of Control may process
                                requisitions for expend-
                                iture of State funds to
                                operate existing air con-
                                ditioning units in view
                                of H.C.R. 38, 52nd Leg.,
Dear Sir:                       1951.

          Your request for an opinion reads in part:

          "We would appreciate receiving an opin-
ion of your office regarding the first re-
solve section of H.C.R. 38, Fifty-second
Legislature of Texas, which is quoted as
follows:

          "'Resolved by the House of Represent-
atives, the Senate of Texas concurring,
That the policy of the State of Texas is
not to permit the use of State funds for
air conditioning State buildings, except
new construction, or for the purchase of
room air conditioning machinery or units;
. . .'

          "There are, at present, many small air
conditioning units belonging to and being
operated by many State Departments. The
Tribune Building is entirely air conditioned;
the Highway Building was completely air con-
ditioned in 1950.

          "There are many departments of the State
that use large exhaust fans to increase the
air changes within the rooms.

          "The Board of Control has several re-
quests for the purchase of repairs to air

conditioning systems and for the purchasing and installing of large exhaust fans.

"Your opinion on the following questions is necessary so that the Board of Control may proceed legally with processing of these requisitions:

"1. Can State funds be used to operate now existing air conditioning units?

"2. Can State funds be used for repairing or the purchase of replacement parts of now existing air conditioning units?

"3. Can State funds be used for the transferring and reinstalling of now existing air conditioning units from one room to another or from one building to another, all within the same department?

"4. Is a large fan, used for the purpose of exhausting air from a room or for the circulation of air within a room, considered an air conditioning unit?"

The preamble of House Concurrent Resolution 38, Fifty-second Legislature, 1951, is pertinent to your request:

"Whereas, Numerous budget requests have been presented to the Legislature for the appropriation of funds for air conditioning State buildings and for the purchase of air conditioning machinery and room air conditioning units . . .

"Whereas, The Legislature finds that the State Board of Control has on many occasions in the past been requested to approve purchases of such items from appropriated State funds; and

"Whereas, The Legislature finds that it is economically unsound to air condition State buildings, except new construction, or to purchase room air conditioning machinery or units for use therein; . . ."

This resolution was subsequently amended by House Concurrent Resolution 187, so as to exempt "equipment for laboratory and scientific purposes" from its application.

The first question to be considered is the weight and effect to be given a concurrent resolution. "Resolutions are less formal than bills and therefore are a less authoritative expression of the legislative action." 2 Sutherland on Statutory Construction (3rd Ed. 1943) 260. A concurrent resolution is one which has the approval of both houses of the Legislature and, before it becomes effective, must be signed by the Governor. Tex. Const. Art. IV, Sec. 15. It is a form of expression, of temporary effect, by which a legislative body may state its opinion or will respecting a given subject. Conley v. United Daughters of the Confederacy, 164 S.W. 24 (Tex. Civ. App. 1913, error ref.). But it is not, for most purposes, a law.

Section 30 of Article III of the Constitution of Texas provides, in part: "No law shall be passed, except by bill, . . ." Pursuant to this mandate, it has been held repeatedly that a duly enacted statute cannot be amended or repealed by a resolution. City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S.W. 735 (1895); Mosheim v. Rollins, 79 S.W.2d 672 (Tex. Civ. App. 1935, error dism.); Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173 (1937). Thus, we think it is evident that House Concurrent Resolution 38 can have no effect upon any existing statutory provisions or express appropriations which authorize purchase of air conditioning units for State buildings.

Although a resolution is not, strictly speaking, a law, it may for some purposes have the same binding effect. Sections 30 and 38 of Article III and Section 15 of Article IV of the Constitution of Texas recognize the right of the Legislature to express its will in the form of a resolution. Conley v. United Daughters of the Confederacy, supra. The Legislature may by resolution direct the expenditure of duly appropriated State funds. Terrell v. King, 118 Tex. 237, 14 S.W.2d 786 (1929). Therefore, State agencies must obey the mandate of House Concurrent Resolution 38 where the statutes are silent as to the expenditure of funds for air conditioning.

Section 37 of the general provisions of Article V, House Bill 426, the general appropriation bill for the biennium ending August 31, 1953, sets forth the conditions under which institutions of higher education may spend funds for air conditioning. In effect, the tenor of this section is almost identical with that of the provisions of House Concurrent Resolution 38 and House Concurrent Resolution 187. The colleges and universities are forbidden to spend appropriated funds "for the purchase of new or additional air conditioning or refrigerating equipment for any purpose except food preservation, laboratory or scientific purposes, hospitals and replacement parts in existing installations." Thus, the purchase and installation of air conditioning equipment by State higher educational institutions is restricted by the appropriation bill in a manner consistent with the policy declared in House Concurrent Resolution 38. These institutions may not, with certain exceptions, purchase new equipment, but they may maintain and replace the parts of installations already in use.

When its meaning is clear and its language unambiguous, a statute will be given effect in strict accordance with its terms. But if the language of the law is not free from ambiguity and a question arises as to its effect upon any particular situation, we may interpret its provisions and look beyond its language, being aided by the canons of construction. Railroad Commission v. Texas & N.O. Ry., 42 S.W.2d 1091 (Tex. Civ. App. 1931, error ref.). The general rules governing the interpretation of statutes are likewise applicable to resolutions. 2 Sutherland on Statutory Construction 262. Ambiguous language should be construed so as to produce a reasonable result, in accord with the general purpose of the resolution. The resolution should be read as a whole and its arrangement taken into consideration, each part being harmonized with all the others. Railroad Commission v. Texas & N.O. Ry., supra.

The motives prompting the Legislature to pass House Concurrent Resolution 38 are stated in the preamble quoted above. Numerous requests were made to the Legislature for the appropriation of funds "for air conditioning State buildings and for the purchase of air conditioning machinery and room air conditioning units." The Board of Control was frequently asked "to approve purchases of such items." The preamble further

states that "The Legislature finds that it is eco-
nomically unsound to air condition State buildings,
except new construction, or to purchase room air con-
ditioning machinery or units for use therein."

Commonly used words and phrases, when con-
tained in an expression of the Legislature, have their
ordinary meaning unless there is an obvious necessity
for adopting another definition. Art. 10, par. 1,
V.C.S.

Webster's New International Dictionary (2nd
Ed. 1938) defines "air conditioning" as "a process of
washing, humidifying, and dehumidifying air before it
enters a room, hall, or building." An air conditioned
office has been judicially described as one which is
rendered reasonably comfortable during hot weather, to
the extent usually experienced in "air conditioned"
hotels, offices, and other buildings. Magee Laundry
& Cleaners v. Harwell Appliance Co., 185 So. 571 (Miss.
Sup. 1939). Thus, an "air conditioning unit" may be
defined as an apparatus used to reduce the temperature
and affect the humidity of the air in an enclosed space.

Generally speaking, "to air condition" means
to install air conditioning machinery. The connotation
is that a building, not presently equipped with such
machinery, is to have it installed. Thus, when the
resolution recites that the Legislature was requested
to appropriate State funds "for air conditioning State
buildings," it refers to requests for funds to pur-
chase and install air conditioning equipment and units
rather than the operation of existing installations
and units. The Legislature obviously knew many State
agencies already had air conditioners in operation.
It could have explicitly directed that these no longer
be operated. We therefore believe it manifest that
the Legislature, in announcing a policy against "air
conditioning State buildings," intended to prohibit
the purchase and installation of new equipment, not to
discontinue the operation of existing installations.
We answer your first and second questions in the af-
firmative.

There are numerous air conditioning units
in use throughout the Capitol and other State office
buildings. The Tribune Building and the State Highway
Building are both air conditioned. This equipment had
been installed before the 52nd Legislature convened

and was put into constant use before it adjourned. The Treasury Department maintains air conditioning installations in its extensive vaults beneath the Capitol. Under normal conditions the atmosphere in these vaults would be unduly moist, thereby causing the rapid decomposition of the bonds and other valuable papers stored there, as well as endangering the health of the employees who care for them. To discontinue the use of this equipment would necessitate its abandonment or disposal, which could result in a waste of State property. We cannot ascribe to the Legislature an intent to effect a result so unreasonable. Lacy v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496 (1928). It must be presumed that the Legislature did not intend to work undue hardship or inconvenience upon those affected by the resolution, in the absence of clear and explicit language to the contrary. National Surety Corporation v. Ladd, 131 Tex. 295, 115 S.W.2d 600 (1938).

Having concluded that air conditioning units already in operation may continue to be operated, repaired, and maintained, we turn to your question with respect to whether an agency having units in operation at one place may move them to another. What we have said respecting the economic aspect of abandoning units already on hand has equal application here. It is our opinion that the authority to operate and maintain these units must embrace the authority to continue their operation at the changed location of the agency. The cost of reinstallation is a necessary incident to the maintenance of the equipment. To hold otherwise would be to require an inefficient failure to utilize existing State property, and we cannot so construe the resolution in the absence of express language manifesting this to be the intent of the Legislature. Your third question is answered affirmatively.

A fan is a device designed to circulate air rather than reduce its temperature. The difference between a fan or an exhaust fan and an air conditioning unit is, in our opinion, a matter of common knowledge, and we must conclude that the Legislature used the term "air condition" in its ordinarily accepted sense. Therefore, we do not believe that a fan, whether designed to exhaust air or to circulate air, is an air conditioning unit within the provisions of House Concurrent Resolution 38. This answers your fourth question.

## SUMMARY

House Concurrent Resolution 38, 52nd Leg., 1951, prohibits the purchase and installation of air conditioning equipment for use in State buildings, except new construction, unless a specific appropriation is made therefor. An ordinary air circulating or exhaust fan is not an "air conditioning unit" within the terms of the resolution. State funds may be used to operate, maintain, transfer, and reinstall air conditioning equipment presently in use by State departments.

APPROVED:

David B. Irons
Administrative Assistant

Everett Hutchinson
Executive Assistant

Price Daniel
Attorney General

Yours very truly,

PRICE DANIEL
Attorney General

By
Calvin B. Garwood, Jr.
Assistant

CBG:em