STATE ex rel. MITCHELL, Relator, v. HOLMES, STATE
AUDITOR, et al., Respondents.
No. 9296.
Submitted May 13, 1953. Decided January 21, 1954.
274 Pac. (2d) 611.

276

Messrs. Loble and Loble and Mr. Gene A. Picotte, Helena, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. John L. McKeon, Asst. Atty. Gen., for Auditor and Treasurer.

Mr. Ralph J. Anderson, Mr. Stanley P. Sorenson, Helena, for Montana Legislative Council.

Mr. Anderson, Mr. McKeon and Mr. Lester H. Loble argued orally.

MR. JUSTICE FREEBOURN:

This is an original proceeding in this court whereby the relator Sam W. Mitchell seeks a writ of injunction to enjoin and restrain the state auditor from approving claims, and issuing warrants therefor, and the state treasurer from paying the same, as made by the eight respondent members of the Thirty-third Legislative Assembly of the State of Montana, assuming to act as the "Montana Legislative Council," and to enjoin and restrain the eight respondent members of such Legislative Assembly from acting as such council.

It is the contention of the relator that the legislative act of the 1953 Legislative Assembly, which purports to create the "Montana Legislative Council," is unconstitutional.

With such contention we agree.

Chapter 143, Laws of 1953, enacted by the Thirty-third Legislative Assembly of the State of Montana and purporting to create the "Montana Legislative Council" is unconstitutional and invalid for the following reasons:

1. In addition to the $30,000 appropriated by the Legislature for the work of this council the Act provides: "In accomplishing the purposes of this act, the council is empowered to accept grants of money * * * from any * * * person or corporation * * *." Section 8.

All the members of the council are members of the Thirty-third Legislative Assembly of Montana and, as such, public officers. If public officers of the state, whether legislative, executive or judicial, were permitted to accept grants or gifts of money from any person or corporation, the grantors and givers of such money would have a financial interest, for it is well known that he who controls the purse pulls the string, to the detriment of the individual citizen. The taking of such money, whether attempted to be sanctioned by statute or not, would encourage an unwholesome condition and would be in

direct conflict with and violative of the constitutional oath, taken by all public officers in this state, whereby each swears:

"I do solemnly swear (or affirm) that I will support, protect and defend the constitution of the United States, and the constitution of the state of Montana, and that I will discharge the duties of my office with fidelity; * * * that I will not knowingly receive, directly, or indirectly, any money or other valuable thing for the performance or non-performance of any act or duty pertaining to my office other than the compensation allowed by law, so help me God." Article XIX, sec. 1, Montana Constitution.

2. This Act allows members of the 1953 Legislative Assembly (four members of the House of Representatives and four members of the State Senate), who were to comprise the council, "actual traveling and other expenses incurred in the discharge of their duties, including attendance at meetings." This violates Article V, sec. 5, of the Montana Constitution which provides the per diem and mileage allowed each member of the legislative assembly and says that he "shall receive no other compensation, perquisite, or allowance whatsoever."

3. The Act contravenes Article V, sec. 8, of the Montana Constitution which provides: "No member of either house shall, during the term for which he shall have been elected, receive any increase of salary or mileage under any law passed during such term."

4. The Act contravenes, also, Article V, sec. 26, of the Montana Constitution which provides: "The legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * creating, increasing or decreasing fees, percentages or allowances of public officers * * *."

5. Every member of the purported council is a member of the 1953 Legislative Assembly, the House members being elected for a term covering 1953 and 1954. The term of the House members or representatives who are members of this council ceases at the end of 1954. Yet this Act, in the face of

Article V, sec. 2, of the Montana Constitution which limits the terms of representatives to a "term of two years," permits the legislators on such council to extend their work and investigations throughout 1953, 1954 and during the 60-day session of the next or 1955, Legislative Assembly.

6. The Act contravenes Article V, sec. 7, of the Montana ▋ Constitution which provides: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state * * *."

7. The Act, also, contravenes Article IV, sec. 1, of the Montana ▋ Constitution which provides: "The powers of the government of this state are divided into three distinct departments: The legislative, executive, and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

The Act permits the legislative department, through this council, to exercise powers of investigation properly belonging to the executive and judicial departments of the state government. It permits the legislative department, through this council, to exercise powers of the judicial department by giving such council the power to "compel the attendance of witnesses before its hearings and require the production of papers, documents or other evidence required by it, and to issue subpoenas for such purposes."

8. It is clear from a reading of the Act that the duties of ▋ the proposed council are the same as those performed by members and committees of the regular legislative assembly during a regular 60-day session, with the exception of finally enacting proposed measures into law. Among these duties are: Examining state offices, state institutions, state funds and appropriations; receiving messages and reports from the Governor and other state officials; holding public hearings and investigations; and reporting its findings and proposed legisla-

tive enactments to each succeeding regular session of the legislative assembly, on or before the tenth day of such session.

The intent and purpose of this Act is to permit the legislative assembly to perform duties and exercise powers, acting through but eight of its members, over a period of more than two years, which the Constitution permits only to be performed and exercised by a duly organized legislative assembly over a 60-day period. The Act, therefore, violates Article V, sec. 5, of the Montana Constitution which provides, in part, that "No session of the legislative assembly * *. * shall exceed sixty days."

It is this court's duty to interpret this Act as directed by the Constitution which provides: "The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." Article III, sec. 29.

The members of the legislative department, like the members of the executive and judicial departments of our state government, are bound by the plain mandates and prohibitions of the State Constitution as it is written and when, as here, it is sought to do that which the Constitution does not allow, the remedy is to first submit the proper amendment or amendments to the Constitution to the vote of the people and thus obtain their sanction and approval to do that which the fundamental law does not now permit.

Let the peremptory writ issue. It is so ordered.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICE BOTTOMLY concur.

MR. JUSTICE ANDERSON (dissenting): ·

I dissent.

In the instant cause, I am constrained to adopt the views expressed by the attorney general of Montana and counsel for the Montana Legislative Council. Language found in the briefs is apropos to the question before us and I quote from it: "Defendant respectfully submits that the order to show cause

should be vacated and, in view of the authorities cited herein, that the jurisdiction of Montana place itself in complete accord with other jurisdictions of this nation by issuing a decision upholding the constitutionality of the Montana Legislative Council."

Quoting again from the briefs, there is found the following language: "As far as our researches extend, we too have been unable to find a single case which denies the legislature the right to appoint a body of its members to sit during vacation, nor can the basic law of those jurisdictions which have upheld the committees be distinguished from the basic laws of Montana. * * * The question of principle has never been contravened, and it is the unshakable belief of the defendant that the Montana Supreme Court will recognize this long adhered to legislative tradition * * *."

In short, it is sought that Montana should adopt a policy which conforms with all its sister states.

This is an original proceeding for an injunction to restrain the state auditor and state treasurer from drawing state warrants, and from taking any steps whatsoever to disburse any moneys appropriated under the provisions of Chapter 143, Laws of 1953, House Bill 166, enacted by the Thirty-third Legislative Assembly.

The constitutionality of the Act is attacked by petitioner and several reasons for his position are set out in the proceeding before us.

The purpose of the Act here in question is to provide. for a permanent legislative council to study and review the organization and structure of state government in Montana. The council functions between the regular legislative sessions and the functions of the present council, if the letter of the Act is carried out, terminate on the last day of the next succeeding legislature.

The briefs and arguments in this cause are replete with suggestions that the indicated power, granted to the committee which was created by the statute here in question, may be

abused. If, however, such a possibility was a reason for withholding power, none would ever be granted. None of the powers, the possession of which is sanctioned by our Constitution, nor even those expressly and in terms granted, are free from the theoretical possibilities of abuse. The underlying basis for the division of power in our government, i. e., the legislative, the executive and the judicial, is that one department may serve as a check upon the other. Timely mention of an abuse by one department properly brought to the attention of the other usually corrects evils as they arise. For a court to anticipate an evil that may be done by an otherwise legally constituted committee is no more within its judicial prerogative than it would be within the legislative prerogative to anticipate an evil that may be committed by a court in its deliberation in connection with a case before it. The Constitution gives the House of Representatives the power to impeach the members of the executive and the judicial departments. The same Constitution gives to the judicial department the last word in the interpretation of the delimitations found in the document itself. It gives to the Governor the power to veto acts of the legislature, which acts in his judgment are not sound.

The wisdom of a legislative act is not a concern for the courts. Upon the basis of this division of power, the Government of the United States and the several states have functioned for these many years, and with but few exceptions, I am inclined to think that, as a people, we have fared well by its usage.

In the instant case this court is called upon to stop the operation of what I think to be a legally constituted legislative committee and thus avoid a political atmosphere which, so we are told, may create a climate favorable for the possibility of vindictiveness by those few in the legislative department who may abuse their sacred duties as members of the committee for personal or political gain. I do not think that such a request is well taken nor do I think that the affirmative relief sought here is within the power of the judiciary.

In times of political differences motives of dishonesty and vindication are often cast upon legislative conduct and what has been said has too often been readily believed by the people of the state or nation. However, our duty as a court is not to substitute our judgment or wisdom for that of the legislature. If this court finds no prohibition against the legislative act creating the committee in the Constitution, and I find none, then self-discipline of the individual members of the committee and the good conscience of the voters must be relied upon to discourage any evil which might possibly stem from the acts of the legislature.

Our duty as a court is to uphold the constitutionality of any legislative act unless there is a clear prohibition in the Constitution against it. The Constitution of Montana is not a doctrine of direction; it only marks the boundaries and delimits the power of the legislature to the extent of the express and necessarily implied prohibitions that are found within it. The legislature, properly assembled, acting for the people in legislative matters, is not bound to look to the Constitution for its authority to act but only must look to it for the prohibitions against which it cannot act. State ex rel. Du Fresne v. Leslie, 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329. Other cases on this point are too numerous to warrant citation.

The political injunctions upon which our system of government is founded are a direct result of the autocracies in nations of yesterday. Governments similar to the autocratic systems of the past have sprung into being in recent years. The forms of government are different but the effects upon the peoples of the world are the same. The Constitutions of the United States and of the State of Montana are replete with safeguards against the introduction of dictatorial forms of government, and I deem it my duty and the duty of any man in a responsible public office of trust to exercise the power with which he is vested in a sparing manner and with the utmost caution lest the checks and balances of our system of government are lost and we too become governed by men and not by laws. I would

be recalcitrant as a jurist if I were to tell a legislature it cannot act unless first finding a clear constitutional prohibition against its action. I would be an autocrat if I told a legislature that it cannot carry on a necessary function because it might, in my judgment, commit a wrong. I choose to be neither.

Little do we realize, and too few references are made in works of historians calling our attention to the methods by which men often succeed in becoming autocrats. In the past, courts out of ignorance, short-sightedness, haste, and all too frequently blind political loyalty, have created a favorable formula for the influx of a government of men, and some nations of the world have lost the cherished right of personal liberty. A court above all other departments of government should be guided by the laws, stretching its imagination only toward the end that progress shall not be fettered to the point of decay. Progress finds itself in the will of the people and their will is expressed, under the democratic system, through the legislative branch of government. All political power is vested in the people. Mont. Const., Art III, sec. 1.

Wonder has it that the same grave constitutional questions that are raised here have not come to the mind of the petitioner before. During the petitioner's career as secretary of state of the State of Montana this is not the first of such committees that has found its existence through legislative act. The Act here in question is taken from one that was passed by the legislature in 1951, and with few exceptions it is almost identical with it. Yet the interim committee functioned between the Thirty-second and Thirty-third regular Legislative Sessions. The Act of the Thirty-second Assembly was approved by the then Democratic governor, and the Act of the recent legislature was approved by a Republican governor. Both major political parties of this state, acting through their respective chiefs, have sanctioned the use of a legislative interim committee. Thus, the political significance of such committees has been resolved by those persons whose duty it is to resolve such questions.

We, as members of this court, should find it our solemn duty to pass upon the constitutionality of the statute itself, without regard to the political effect it may have or the practical effect, good or bad, which it is deemed to have as the results are conjured up in the mind of those who are for or against it.

As is said above, with the exception of the language purporting to cause the council to be a permanent one, the Act before us is almost identical with an Act passed by the Thirty-second Legislature. Chapter 185, Laws of 1951. The council under the 1951 Act functioned during the interim between regular sessions and its right to function was not challenged in the courts of this state.

It is urged by petitioner that the term during which the council is created goes beyond the terms of the legislators who serve thereon and is an attempt to invest the members of the council with legislative powers after their elective terms which, as petitioner says, is clearly unconstitutional.

It is elementary that, except in certain instances, one legislature cannot restrict the power of its successor. However, in the instant case the only power that the committee is vested with is that of making inquiry and suggestion. It goes without saying that the committee's findings are to be reported back to the next succeeding legislature, whether the committee operates for one month, for the entire interim, or beyond the interim. Whether or not the next succeeding legislature will or will not be interested in the report made is something both this court and the committee must leave entirely to the discretion of the next succeeding assembly. Our concerns here are, does a legislature have the right to create an interim committee in the form of a permanent legislative council, and can the members of the legislature act as members thereof. It is so obvious that the next succeeding legislature can repeal almost any act of its predecessor that I need not dwell upon the logic or the reasons making this so.

This committee, as should be all legislative committees, is established with the view in mind of recommending the adop-

tion of legislation for the betterment of our people. It is an inquisitorial group; it has no power to legislate but only the power to inquire and recommend.

Investigations, whether by the legislature or legislative committees, are an established part of representative government. The legislature has both legislative and inquisitorial power. One power without the other would stultify the very means by which such an assembly could function. The cases in other jurisdictions are numerous in sustaining similar acts and the position of similar committees. I find no cases which declare interim committees, which have been created by statute, to be unconstitutional.

The legislature of the State of Washington enacted a similar law. The constitutional inhibitions in the Washington Constitution are very similar to those in the Montana Constitution. The Act was attacked in the courts of Washington basically for the same reasons that petitioner here attacks the statute passed by the Thirty-third Legislative Assembly of Montana, supra. The Supreme Court of Washington held the Act to be constitutional.

In the case of State ex rel. Hamblen v. Yelle, 29 Wash. (2d) 68, 185 Pac. (2d) 723, 726, it is said: "In 1933, No. 206, p. 321, Mich. Laws of 1933, the legislature of the state of Michigan created by statute a legislative council which was directed to work during the interim between legislative sessions in the gathering of information for the use of the next ensuing legislature. Similar statutes have been enacted by the states of Connecticut (Gen. St. Supp, 1939, sec 5e), Illinois (Ill. Rev. Stat. 1943, c. 63, secs. 33-42), Kansas (Gen. St. 1935, 46-301 to 46-312), Kentucky (KRS 7.010 et seq.), Maine (R.S. 1944, c. 9, sec. 23 et seq.), Maryland (Laws 1939, c. 62, Laws 1945, c. 971), Missouri (Mo. R. S. A. sec. 14737 et seq. [V. A. M. S. 23.010 et seq.]), Nebraska (R. S. 1943, sec. 50-401 et seq.), North Dakota (Laws 1945, c. 289), Oklahoma (74 O. S. 1941, sec. 451 et seq.), Pennsylvania (46 P. S. sec. 65 et seq.), Rhode Island (Pub. Laws 1939, c. 660, secs. 220, 221) and Virginia (Code 1942, sec.

580a et seq.). In Virginia the committee is denominated 'Virginia Advisory Legislative Council.' The legislature of some of the states call the committee a legislative research committee, joint state government commission, and committee on legislative research, but the committees were all created for the purpose of obtaining information for the use of the next session of the legislature. By constitutional or statutory provision, all of the states listed above, except Rhode Island, prohibit members of the legislature from filling a civil office created by the legislature during the term for which such legislators are elected. Const. Mich. art. 5, sec. 7; Const. Conn. art. 10, sec. 4; Smith-Hurd Stats. Const. Ill. art. 4, sec. 15; Laws Kan. 1931, c. 220, sec. 1; Const. Ky. secs. 44, 165; Const. Me. art. 4, pt. 3, secs. 10, 11; Const. Md. art. 3, sec. 17; Mo. R. S. A. Const. 1945, art 3, sec. 12; Const. Neb. art. 3, sec. 9; Const. N. D. art. 2, sec. 39; O. S. 1941 Const. art. 5, secs. 18, 23; P. S. Pa. Const. art. 2, sec. 6; Const. Va. secs. 44, 45.''

The court held in State ex rel. Hamblen v. Yelle, supra, that members of the legislature who were appointed to serve as members of a legislative council were not civil officers within the meaning of the Washington Constitution, Art. II, sec. 13, which reads as follows: ''No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected.'' The court cited State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 Pac. 411, 418, 53 A. L. R. 583, which held that to be such an officer within the meaning of the constitutional prohibition, ''it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public''.

The Act here in question establishes a council, the described functions of which, for the most part, consist of finding facts and the making of recommendations. Such powers cannot be said to constitute the exercise of sovereign powers. State ex rel. Herbert v. Ferguson, 142 Ohio St. 496, 52 N. E. (2d) 980.

Sovereign power is defined as that power in a state to which none other is superior or equal, and which includes all the specific powers necessary to accomplish ends and purposes of government. Black's Law Dictionary, Deluxe Ed., p. 1643.

The case of State ex rel. Hamblen v. Yelle, supra, was cited with approval in State ex rel. Robinson v. Fluent, 30 Wash. (2d) 194, 191 Pac. (2d) 241, and again in the case of State v. James, 36 Wash. (2d) 882, 221 Pac. (2d) 482. See also, Parker v. Riley, 18 Cal. (2d) 83, 113 Pac. (2d) 873, 134 A. L. R. 1405; In re Opinion of the Justices, 248 Ala. 590, 29 So. (2d) 10; Terrell v. King, 118 Tex. 237, 14 S. W. (2d) 786; State ex rel. Herbert v. Ferguson, supra, and other cases too numerous to cite.

Article V, sec. 31, of the Constitution of the State of Montana provides, among other things, that no law shall extend the term of any public officer. It is argued that this section of the Constitution is violated because of the fact that the term of most of the legislators, who are members of the council, expires prior to the end of the term created for the council.

It is said above that the members of the council exercise no sovereign power. Their terms as legislators are not extended nor could they be extended except as otherwise provided by the Constitution. Courts elsewhere hold that private citizens, as well as members of the legislature, may in the absence of constitutional inhibitions be members of committees. 81 C. J. S., States, sec. 42; Terrell v. King, supra.

Constitutional provisions fixing or limiting the salary of public officers as precluding allowances for expenses or disbursements are covered thoroughly in 5 A. L. R. (2d) 1182 to 1225. The Constitution of Montana does not prohibit the reimbursing of the council members for actual expenses incurred while carrying out their duties on the council.

The Act creating the council provides, in part, as follows: "In accomplishing the purposes of this act, the council is empowered to accept grants of money, the use of facilities· or services and any other assistance from any state, federal or private agency, person or corporation, provided that such acceptance involves

no responsibility of any kind on the part of the council or the State of Montana with respect to the recommendations or activities of the council or otherwise." Section 8.

It is urged that this provision violates certain constitutional provisions. So far as this court is informed, no grants have been offered under the Act though that feature was contained in the 1951 Act, Ch. 185, Laws of 1951, and we should not presume that if a grant is made it would be repugnant to constitutional prohibitions. In this connection it is my judgment that the time for us to pass upon this question is when an effort is made to take an advantage of that portion of the Act itself. Many grants have been made by the Federal Government to this state and to my knowledge they have been, for the most part, freely accepted.

The Act provides that the committee may compel the attendance of witnesses before its hearings and require the production of papers, documents, or other evidence required by it, and to issue subpoenas for such purposes. Under the authority granted to the committee, i. e., to inquire into state institutions, boards, etc., it is safe to assume that the departments of this state will cooperate with the committee by furnishing it the information it desires. What, if anything, the committee might do if a witness failed to comply with a subpoena or to otherwise give information required of him, is not before this court, and I deem it unnecessary to pass upon the question here. Certainly, if the council is to function at all, it must have the authority to call witnesses and examine facts; otherwise its purpose would be without effect. A subpoena and the right to the use thereof are not grants of sovereign power which would of themselves make the Act here in question unconstitutional.

Moreover, if most of the so-called objectionable features of the Act which are suggested by petitioner were stricken from it, nonetheless, the legislation would not be defeated in its entirety in that the ends sought by it could be nevertheless carried out by the committee.

"The courts, when interpreting constitutional restrictions

upon the legislature [in regard to time limits on legislative sessions], should give such restrictions a narrow construction. A court might well hold that the time limits constitutionally imposed upon legislative sessions merely prevent the legislature from passing *acts* directly affecting the inhabitants of the state, but do not affect the right of the legislature to obtain information and data to pass intelligent legislation when the legislature reconvenes. * * * there is no substantial reason why the courts should not recognize these committees. By broadly construing the restrictions of state constitutions, which in themselves are Mid-Victorian in nature, the courts are unduly hamstringing modern intelligent legislative processes.'' Temple Law Quarterly, Vol. 23, April, 1950, p. 415.

Of course, courts should be called upon to suppress any act of a legislative committee or of the legislature itself, if the act does violence to the Constitution or the laws of the state. The time for such redress to the courts is when the act is committed or is about to be committed. I do not choose to anticipate that the committee here in question, or any of the individual members of the committee, will knowingly commit a wrong. They, or any one of them, may fall into error the same as this court or its individual members may likewise do. Courts should cross that bridge when they get to it and under our way of doing things I believe that is soon enough.

For the reasons herein stated the petition should be denied.

MR. JUSTICE ANGSTMAN:

I concur in the foregoing dissenting opinion of Mr. Justice Anderson.

### Order

It having been suggested, in writing, to the above entitled Court that since the institution of these proceedings, and during the pendency thereof, Charles L. Sheridan, State Treasurer of the State of Montana, has died, and that Edna J. Hinman was, on the 1st day of November, 1953, duly and regularly qualified as his successor, pursuant to her appointment, and is now, and

has been, since said 1st day of November, 1953, the duly appointed, qualified and acting Treasurer of the State of Montana,

Now, Therefore, on motion of the attorneys for the plaintiff and relator, herein, and under the provisions of Rule 17 of the Rules of the Supreme Court of the State of Montana, It is Ordered that the said Edna J. Hinman, as said State Treasurer of the State of Montana be, and she is hereby substituted as party defendant herein, in the place and stead of the said Charles L. Sheridan, deceased;

It Is Further Ordered that all proceedings herein be so amended, nunc pro tunc, as of the 1st day of November, 1953, the date upon which said Edna J. Hinman assumed her said office as State Treasurer of the State of Montana.

It Is Further Ordered that the peremptory writ issue forthwith.

Hugh Adair,
Chief Justice,
Harry J. Freebourn and
R. V. Bottomly,
Justices.