[No. 13894. In Bank. — January 4, 1891.]

# W. A. KIRKWOOD, Respondent, *v.* A. J. SOTO, Appellant.

CONSTITUTIONAL LAW — OFFICERS — INCREASE OF SALARY — INCIDENTAL EXPENSES. — Section 9 of article 11 of the constitution, forbidding the compensation of any county, city, town, or municipal officer from being increased after his election or during his term of office, only applies to the compensation for services to be rendered, and does not forbid an allowance for the incidental expenses of the office, to be determined by the necessity which the business of the office may develop.

ID. — COUNTY GOVERNMENT ACT — AMENDMENT OF POLITICAL CODE — TRAVELING EXPENSES OF COUNTY SUPERINTENDENT OF SCHOOLS. — The County Goverament Act fixing a salary for county superintendents of schools "as compensation for the services required of them by law, or by virtue of their office," does not prevent the application of the amendment of section 1552 of the Political Code, made in March, 1889, allowing each county superintendent his traveling expenses, and other incidental expenses connected with the office, to a county superintendent holding office at the time of the amendment.

APPEAL from a judgment of the Superior Court of Contra Costa County.

The facts are stated in the opinion.

*W. S. Tinning*, for Appellant.

*Chase, Chase & Miller* for Respondent.

BELCHER, C. C. — The respondent was elected superintendent of schools for Contra Costa County at the general election held in 1886. His term was four years, commencing on the first Monday of January following. In due time he qualified and entered upon the discharge of his duties, and has ever since continued to hold the office.

At the time of his election, Contra Costa was a county of the seventeenth class, and the County Government Act contained the following provision in regard to his salary: —

"Sec. 179. In counties of the seventeenth class, the county officers shall receive as compensation for the

services required of them by law, or by virtue of their office, the following salaries, to wit: . . . . 11. The superintendent of schools, eighteen hundred dollars per annum." (Stats. 1885, p. 176.)

In March, 1889, section 1552 of the Political Code was amended so as to read as follows:—

"Sec. 1552. Each county superintendent shall receive his actual and necessary traveling expenses, said expenses to be allowed by the board of supervisors, and to be paid out of the county general fund; provided, that this amount shall not exceed ten dollars per district per annum. He shall also be allowed postage and expressage, payable out of the county school fund, two dollars for each school district; provided, that in incorporated cities each school containing three hundred pupils shall be considered equal to one school district."

After this amended section took effect the respondent incurred, in the performance of his official duties as school superintendent in visiting schools in his county, actual and necessary traveling expenses to the amount of $76.75. For this amount he presented a claim to the board of supervisors, properly itemized and verified, for allowance. The claim was examined and allowed by the board, and a warrant was ordered drawn on the county treasurer therefor. The appellant was county auditor at the time, and, as such, refused to draw the warrant ordered, and thereupon this proceeding was commenced to compel him to do so.

After a hearing, the court below granted the prayer of the petition, and ordered a peremptory writ of mandate to issue, commanding the appellant to forthwith draw his warrant in favor of the petitioner upon the county treasurer for the amount allowed and ordered paid by the board of supervisors. From that order or judgment this appeal is prosecuted.

The only contention of appellant is, that section 1552 of the Political Code is inapplicable and unconstitutional,

so far as the respondent is concerned, it having been passed after he was elected to office, because, in authorizing the payment of his necessary traveling expenses, it in effect increases the compensation or salary allowed him at the time of his election.

The clause of the constitution relied upon reads as follows: "The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office." (Art. 11, sec. 9.)

The words "compensation" and "salary" were evidently used synonymously in the constitution, and in the County Government Act. Thus in article 5, section 19, of the constitution, it is provided: "The governor, lieutenant-governor, secretary of state, controller, treasurer, attorney-general, and surveyor-general shall, at stated times during their continuance in office, receive for their services a compensation which shall not be increased or diminished during the term for which they shall have been elected," etc.

In article 9, section 2, it is provided: "A superintendent of public instruction shall, at each gubernatorial election after the adoption of this constitution, be elected by the qualified electors of the state. He shall receive a salary equal to that of the secretary of state," etc. And in article 6, section 17, this language is used: "The justices of the supreme court and judges of the superior court shall severally, at stated times during their continuance in office, receive for their services a compensation which shall not be increased or diminished after their election, nor during the term for which they shall have been elected. The salaries of the justices of the supreme court shall be paid by the state. One half of the salary of each superior court judge shall be paid by the state; the other half thereof shall be paid by the county for which he is elected. During the term of the first judges elected under this constitution, the annual salaries of the justices of the supreme court shall be six

thousand dollars each." In the County Government
Act the same language is used at the commencement of
each section which fixes the compensation of county
officers.   It is: " The county officers shall receive as com-
pensation for the services required of them by law, or
by virtue of their office, the following salaries."

Since the adoption of the present constitution many
acts have been passed by the legislature, after the com-
mencement of terms of office, providing for the payment
of necessary expenses incident to the offices.   Among
them the following may be noted:—

The justices of the supreme court and the judges of
the superior court who were first elected under the con-
stitution entered upon the discharge of their duties as
such on the first Monday of January, 1880.   In April
following, an act was passed to amend part 1 of the Code
of Civil Procedure, and substituting a new part 1, to take
the place thereof.   (See Amendments to Code, 1880, p.
21.)   By section 47 of this act it was provided that the
supreme court shall hold regular sessions at the capital
of the state, at the city and county of San Francisco,
and at the city of Los Angeles; and that " the justices
and officers of the supreme court shall be allowed their
actual traveling expenses in going to and from their re-
spective places of residence upon the business of the
court, or to attend its session."   By section 71 it is pro-
vided that a judge of any superior court may hold the
superior court in any county at the request of the judge
of that county, " and upon the request of the governor,
it shall be his duty to do so."   And by section 160 it is
provided that "a judge so holding a court at the request
of the governor shall be allowed his actual expenses in
going to, returning from, and attending upon the busi-
ness of such court, which shall be a charge against the
treasury of the county where such court is held, and
paid out of the general fund thereof."

The constitutionality of these provisions has never

been questioned, so far as we are advised, in any court, or elsewhere, and yet, if the theory of the appellant be true, they would seem to have been subject to the same objections raised here, during the terms of the justices and judges who were in office at the time the act was passed.

The question now presented for decision does not appear to have been ever passed upon by the supreme court of this state, but a similar question was before the supreme court of Illinois in *Briscoe* v. *Clark County*, 95 Ill. 309.

The constitution of that state provided that the county board should fix the compensation of all county officers, with the amount of their necessary expenses, " provided that the compensation of no officer shall be increased or diminished during his term of office." The supreme court held that it was the salary of the county officer — the compensation for the personal discharge of official duty — which the board was forbidden to change. The compensation or salary was to be fixed in advance, but the expenses were to be determined by the *necessity* which the business of the office should develop, and being so, the allowance for expenses could be increased.

In our opinion, it was the compensation for services to be rendered, and not the incidental expenses of the office, that the legislature was forbidden by section 9 of article 11 of the constitution to raise.

We therefore advise that the judgment appealed from be affirmed.

Foote, C., and Gibson, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.