der the partnership agreement constituted partnership property. * * *"

We quite agree with appellant that "when partners who are sui juris make a dissolution and settlement of a partnership, such settlement is binding between them, as much so as a decree of a court could make it, and it cannot be opened except for fraud, accident or mistake." Harris v. Harris, 132 Ala. 208, 31 So. 355, 356. However, this court in the same case further said: "* * * On a dissolution, we know of no principle of law forbidding them to make a partial settlement of their affairs, without such settlement having the effect to estop either to seek and to enforce another and a final settlement. 'Whenever,' says Mr. Parsons, 'there is a dissolution of a partnership, for any cause, it would seem there must be an account, if it be demanded by any party in interest.' Pars.Partn. 408. A final balance on account should be an absolute termination of all the partnership accounts between the parties. Id. § 194. A partial settlement is good, if fairly made, so far as it goes, and is binding only to that extent."

As indicating that a partial settlement may be made between the partners, leaving phases of the partnership unadjusted, this court in Moody v. Headrick, 247 Ala. 455, 25 So.2d 137, 138, said: "Furthermore, even if there has been no final settlement of partnership affairs—something which is not necessary to decide—partnership affairs relating to the coal business have certainly been withdrawn or separated from other partnership matters and made the foundation of a distinct settlement. There can be no objection to this as between the partners, even if other accounts remain unadjusted. * * *"

There can be no doubt that the present bill falls far short of being sufficient as a bill to reopen and surcharge a partnership accounting. There is no allegation of fraud or accident nor are errors or omissions so specifically and clearly alleged as to justify correction thereof. Scheuer v. Berringer, 102 Ala. 216, 14 So. 640. Nor does complainant attempt to acquit himself of negligence in discovering error or fraud. Brody v. Maril, 208 Ala. 464, 94 So. 764.

But the bill does allege a "clear understanding" between the partners that settlement as to certain music box machines was deferred and would be the subject of a subsequent settlement. Accordingly we do not consider the bill as a bill to reopen and surcharge a partnership account, but as a bill for an accounting and settlement of unadjusted partnership matters. Viewed from this standpoint and assuming that the allegations speak the truth, as we should on demurrer, because we are not here passing on questions of evidence, we do not consider that the demurrer pointed out substantial defects in the bill.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.

29 So.2d 10

## In re OPINION OF THE JUSTICES.
### No. 71.

Supreme Court of Alabama.
Jan. 18, 1947.

LAWSON, Justice (dissenting).

I regret that I am compelled to dissent from the opinion of the majority of the Justices. I cannot concur in the conclusion which they have reached, nor can I agree with the reasoning, as I understand it, which leads to that conclusion.

We are not here called upon to determine whether or not the appointment of interim committees by the Legislature at its organizational session is expedient or whether it would be for the best interest of the State of Alabama that such be done. I take it that our function is solely to decide whether under the existing organic law, such action legally can be taken.

I do not question the fact that the Legislature has the inherent power to appoint interim committees; but I do contend that they cannot exercise that power at this so-called organizational session. In my

judgment, the language of the amendment to the Constitution of 1901, which was adopted on November 5, 1946, and which has been subsequently proclaimed a part of the Constitution of this state, clearly denies the right of the Legislature to appoint interim committees at the session which convenes on the second Tuesday in January next succeeding their election and which session cannot last longer than ten consecutive calendar days. This session has been and will hereafter be referred to as the organizational session of the Legislature to distinguish it from the regular and special sessions. The amendment to the Constitution heretofore referred to expressly designates it as an organizational session.

The provisions of the said Constitutional amendment which are material to the present inquiry are as follows: "* * * The Legislature shall convene on the second Tuesday in January next succeeding their election and shall remain in session for not longer than ten consecutive calendar days. No business can be transacted at such sessions except the organization of the Legislature, the election of officers, the appointment of standing committees of the Senate and the House of Representatives for the ensuing four years, which election and appointment may, however, also be made at such other times as may be necessary, * * *."

It appears from a reading of the above quotation that it contains both restrictive and permissive provisions. The restrictive provision is that at this organizational session the Legislature shall transact no business. The permissive features of the amendment are the exceptions to the restrictive provision. It appears clear to me that if the Constitution says that the Legislature shall transact no business except certain types specifically enumerated that it is without power to transact any other type of business. The appointment of interim committees is not included within the permissive provisions; therefore, it appears to me that it is clear that such committees cannot be designated in this organizational session.

It seems to be without question that standing committees and interim committees are entirely different in their nature and in the type of duties which they perform. No contention is made that because the Legislature can appoint standing committees that they therefore can appoint interim committees.

What then, are the reasons set out in the majority opinion for the conclusion therein reached? As I understand the opinion the reasons are two: first, that the designation of an interim committee is not doing business and second, that if it is doing business, the authority for making such designation is found in the authority given the Legislature to organize.

As to the first reason, the majority opinion says as follows: "An interim committee does not legislate, it merely makes inquiry and obtains data so that it may properly report to the regular session their findings. This, in our opinion, is not doing business, within the meaning of the constitutional provision above noted, but is merely in preparation to that end when the Legislature reconvenes in its regular session." If I understand the above quotation correctly, it means that since the function of an interim committee is not legislative business, that the prohibition or restriction of the present constitutional amendment does not apply to its designation. I frankly cannot find any logic in such reasoning. The prohibition in the constitutional amendment is not against the business which might be subsequently performed by a committee, but is against the doing of business by the Legislature at its organizational session. How can it be said that the designation of an interim committee is not legislative business? It appears to me that if it is not legislative business the Legislature has no "business" taking up its time with their selection. Certain it is that the Legislature in proposing the amendment to the Constitution considered that the appointment of standing committees is business of the Legislature, for they included that function within the exceptions to the restrictive provision.

I most earnestly insist that the power given to the Legislature to organize at this session does not carry with it the power or authority to designate interim committees.

596

Perhaps it might be reasonable to say that the power to organize would include the power to appoint such committees if the amendment had not made express provision for other functions at such session, which clearly indicate to my mind that the words "organization of the Legislature" have a restricted and definite meaning, namely the seating of the members and election of presiding officers. See Cushing's "Law and Practice of Legislative Assemblies", pp. 106, 107, which authority I submit is much more applicable to the present inquiry than the citation contained in the majority opinion relating to organization of corporations. Obviously, the Legislature in submitting the amendment did not think that the words "organization of the Legislature" included the right to elect all of its officers, because specific provision is made for such elections. Likewise, the Legislature in submitting the constitutional amendment did not consider the words "organization of the Legislature" to include the appointment of standing committees because they make specific provision for the appointment of standing committees.

How, then, do the majority come to the conclusion that there is any authority whatsoever for the appointment of interim committees? They say: "This constitutional amendment clearly embraced other matters than those named in these exceptions. For illustration, surely during the ten-day session, and as a part of this organization, the Legislature could select pages, as well as doorkeepers; and no one could doubt for a moment the power of the Legislature also at this session to select clerks of committees. These are not matters mentioned in the amendment and, yet, very clearly are a part of the organization and do not constitute business in the meaning of this constitutional provision."

The above quoted portion of the majority opinion seems to be the basis for the conclusion that the words "organization of the Legislature" include the appointment of interim committees. In other words, the Legislature needs to appoint doorkeepers, pages and committee clerks and there is no specific mention made of such appointments. Therefore, the words "organization of the Legislature" must be con-

strued as including the appointment of such officers.

I heartily agree that at this organizational session the Legislature has the power to appoint pages, doorkeepers and clerks. But I contend that in making such appointments they are doing business, but the authority to do such business is included in the authority to elect officers.

One of the leading works on the subject here under consideration is Cushing's "Law and Practice of Legislative Assemblies." For some reason this work is not referred to in a single instance in the majority opinion. To show that the power to elect officers includes the power to elect or appoint doorkeepers, clerks and pages, I quote from the outstanding work hereinabove mentioned: "The principal officers necessary to enable a legislative assembly to perform its various functions are three, namely; a presiding officer, called the speaker or president; a recording officer, denominated as the secretary or clerk; and an executive officer, sometimes known as the messenger, but more commonly, the sergeant-at-arms. Besides these, there are officers of a less essential character, such as the chaplain and printer, and others of a subordinate description, as the assistant clerks, engrossing clerks, committee clerks, stenographers, doorkeepers, and messengers of the sergeant-at-arms." See page 110. The majority opinion made reference to doorkeepers, clerks and pages. In the above quotation doorkeepers and clerks are specifically included within the general scope of officers of a legislative assembly, and I submit that messengers of the sergeant-at-arms perform substantially the same duties as do pages.

If the authority above referred to is correct—and I submit it has been considered as one of the leading works on this subject for many years—then the reasoning of the majority opinion falls of its own weight.

With a wave of the judicial hand, the majority opinion disposes of a rule many, many times applied by this court, namely that "where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly

mentioned." 59 C.J. 984. The only reason given as to why this time-honored rule, so often applied by this court, should not be applied here, is found in the following language: "We are persuaded, however, that this view is too narrow." Then in an effort to show why such view is too narrow, reference is made to the fact that such a construction would prevent the appointment of pages, doorkeepers, and clerks. I believe I have heretofore definitely pointed out the fallacy of this argument, as they are provided for in the authority given to elect officers.

It is interesting to note that the power or authority is not given to appoint committees in general. Only a specific type of committee is to be appointed, namely, "standing" committees. How can we disregard the use of the word "standing" except by saying that in proposing the amendment the Legislature used language which they did not intend to use. Such a conclusion ignores another common rule of statutory construction, that in construing a statute effect must be given, if possible, to the whole statute and every part thereof. 59 C.J. 995.

It has been suggested, although the majority opinion does not seem to deal with the question, that since the Legislature has the inherent power to appoint interim committees and since the constitutional amendment with which we are here concerned does not expressly say it could not appoint interim committees, that it follows that such can be done. I submit this reasoning is entirely erroneous. As before pointed out, the constitutional amendment prohibits the doing of any business by the Legislature and then in its permissive features gives them the authority to perform those functions therein specifically enumerated. Can it reasonably be argued that since the constitutional amendment does not say that an appropriation bill cannot be passed at this organizational session that such a bill could be passed?

It has also been suggested that committee members are officers of the Legislature and that, therefore, under the authority to elect officers the Legislature has the authority to elect to appoint any committee which it sees fit. I cannot agree with this reasoning. The fundamental question with which we are here concerned is the intention of the Legislature in proposing the constitutional amendment here involved. If it had intended for the words "election of officers" to include the appointment or designation of any committee, they most certainly would not have used the words "appointment of standing committees." If a member of an interim committee is an officer, certainly a member of a standing committee would be considered an officer. Therefore, it appears that in using the words "election of officers" the Legislature did not intend to authorize the designation of committees. It used specific language and gave definite authority for the appointment of a special commonly-known type of committee, namely, a standing committee.

I am firmly convinced the opinion of the majority labors vigorously to sustain the conclusion therein reached. The reasoning, I most respectfully submit, is not only strained, but fallacious. I cannot concur therein.

28 So.2d 796

**LOUISVILLE & N. R. CO. v. SUNDAY.**

**3 Div. 465.**

Supreme Court of Alabama.

Jan. 23, 1947.

