STATE OF MONTANA, EX REL., DAVID F. JAMES, RELATOR, v. J. HUGO ARONSON, FORREST H. ANDERSON AND FRANK MURRAY, BEING AND CONSTITUTING THE STATE BOARD OF EXAMINERS, ET AL., RESPONDENTS.

No. 9805.
Submitted May 17, 1957. Decided August 20, 1957.
314 Pac. (2d) 849.

Mr. Ralph J. Anderson, Helena, and Mr. Ben E. Berg, Jr., Livingston, for relator.

Mr. Forrest H. Anderson, Atty. Gen., Mr. William F. Crowley and Mr. James A. Robischon, Asst. Attys. Gen., for respondents.

Mr. Anderson, Mr. Berg, Mr. Crowley and Mr. Robischon argued orally.

MR. JUSTICE CASTLES:

This is an original proceeding in this court. The relator is seeking a writ of mandate to compel the State Board of Examiners to allow his claim for actual expenses in attending the organizational meeting of the Legislative Council created pursuant to the provisions of House Bill 46, chapter 34, Laws of 1957.

The application for a writ of mandamus alleges the enactment of the act, the appointment of the relator as a member of the Interim Committee known as the Legislative Council, the attendance at a meeting for organization, the filing of his claim for actual expenses pursuant to the provisions of the act and the rejection of the claim by the State Board of Examiners upon the ground that the act is unconstitutional under the authority of the case of State ex rel. Mitchell v. Holmes, 128 Mont. 275, 274 Pac. (2d) 611.

An alternative writ of mandamus was issued directed to the respondent Board. To the alternative writ, the respondents filed three separate pleadings; a general demurrer, a motion to quash, and an answer. The motion to quash challenged the sufficiency of the alternative writ of mandate and the affidavit upon which it was based. The motion to quash also alleged that the act under which the relator seeks relief is unconstitutional and pointed out the specific provisions of the Constitution which are alleged to be violated by the statute. As previously stated, a general demurrer was also filed.

The answer of the respondents places in issue the validity of the appointments to the Legislative council.

House Bill 46, now designated as chapter 34, Laws of 1957, became law when the governor signed it on February 21, 1957. The relator, State Senator David F. James, of Liberty County, was a member of the 1957 legislative body, and it is conceded by the respondents that he did attend the organizational meet-

ing, and should be entitled to payment of his claim for actual expenses, if (1) his appointment was properly made under the terms of the act in question, and (2) if the act iself is constitutional.

Two cases have heretofore been before this court involving similar enactments. In the first case, State ex rel. Mitchell v. Holmes, supra, chapter 143, Laws of 1953, was declared unconstitutional by a three to two decision of this court. The present act omits some of the provisions which were condemned by the court in that case, first, a provision extending the term of membership on the Council beyond the legislative term to which he was elected, and second, the right to accept donation of funds. Other provisions of the present act were condemned in that case.

The second case, that of State ex rel. Schara v. Holmes, 130 Mont. 108, 1956, 295 Pac. (2d) 1045, turned upon the question of the validity of the appointment of the members of the Council.

The 1957 Act being questioned is, in part, as follows:

"Section 1. There is hereby created a legislative council which shall consist of six (6) members of the House of Representatives who shall be appointed by the Speaker of the House of Representatives, * * * and six (6) members of the State Senate who shall be appointed by the committee on committees of the State Senate, * * * The first members of the legislative council shall be appointed not later than the sixtieth legislative day of this session. New members of the council shall be appointed not later than the sixtieth legislative day of each succeeding session. Membership on said council shall terminate with the termination of each member's term of office, or on December 31 of the year following the year in which the appointment was made, whichever event first occurs. Any vacancy on said legislative council occurring when the legislature is not in session may be filled by the selection of another member of the legislature, by the remaining members of the council.

"Section 2. Powers and Duties. The legislative council shall

accumulate, compile, analyze and furnish such information bearing upon any matters relating to existing or prospective legislation as may be determined by it upon its own initiative pertaining to important issues of policy and questions of state-wide importance, including but not limited to investigation and study of the possibilities of consolidations of departments, commissions, boards and institutions in state government for the elimination of unnecessary activities and duplications in office personnel and equipment, for the coordination of activities, for the purpose of increasing efficiency of service or effecting economies, and for the purpose of studying and inquiring into the financial administration of state governments and sub-divisions thereof, including the problems of assessment and collection of taxes, and all other matters pertaining to the function of all departments and branches of state government.

"The legislative council shall prepare such bills and resolutions as in its opinion the welfare of the state may require for presentation to the next regular session of the legislative assembly.

"Section 3. The legislative council may employ an executive director and such other personnel, not members of the council, as it deems necessary to assist in the preparation of its recommendations, proposed legislative acts and any other activities and shall fix the compensation of such employees. It shall further have the power to employ the services of any research agency which it deems necessary in the discharge of its duties.

"The legislative council may appoint special committees composed of either other members of the legislature or private citizens or both, to study and inquire into any specific governmental problem and to make recommendations for the solution of same. The work of such special committees shall be performed under the general supervision of the legislative council and the personnel, data and facilities of said council shall be made available to such special committees.

"Section 4. The legislative council shall have authority to investigate and examine into the costs of state governmental

activities and may examine and inspect all records, books and files of any department, agency, commission, board or institution of the State of Montana.

"Section 5. In the discharge of its duties the legislative council shall have authority to hold hearings, administer oaths, issue subpoenas, compel the attendance of witnesses, and the production of any papers, books, accounts, documents and testimony, and to cause depositions of witnesses to be taken in the manner prescribed by law for taking depositions in civil actions in the District Court. In case of disobedience on the part of any person to comply with any subpoena issued on behalf of the council, or any committee thereof, or of the refusal of any witness to testify on any matters regarding which he may be lawfully interrogated, it shall be the duty of the District Court of any county or the judge thereof, on application of the legislative council to compel obedience by proceedings for contempt as in the case of disobedience of the requirements of a subpoena issued from such court on a refusal to testify therein.

"Section 6. Members of the legislative council and its committees shall serve without compensation but shall be reimbursed for actual travel and other expenses incurred in the discharge of their duties, including attendance at meetings.

"Section 7. The legislative council shall organize within thirty (30) days after the passage and approval of this act by electing one (1) of its members as its chairman and by electing such other officers from among its membership as the council may deem desirable. The council is empowered to adopt rules of procedure and to make all arrangements for its meetings and to carry out the purpose for which it is created. The council and its committees are directed to keep accurate records of their activities and proceedings.

"Section 8. There is hereby appropriated the sum of one hundred thousand dollars ($100,000.00) for the purpose of carrying out the provisions of this act. * * *"

The respondents' motion to quash challenged this statute as

being in contravention of the Montana State Constitution on several grounds that will appear hereinafter.

There are several differences between the statute above set forth, and chapter 143, Session Laws of 1953, which was condemned by this court in Mitchell v. Holmes, supra. In the 1953 Act, membership on the Council continued on throughout the legislative session, which the court held extended the term of office of a member of the House of Representatives beyond the constitutional limitation of two years in violation of section 2, article V of the Constitution. The 1957 Act specifically provides that membership on the Council expires upon termination of the member's legislative term, and in no event may continue beyond December 31 of the year following appointment to the Council.

Also, the 1953 Act permitted the Council to receive grants of money which the court, in Mitchell v. Holmes, held violated section 1, article XIX of the Constitution. No such provision is found here.

The similarities between the 1953 Act and the 1957 Act are as follows: (1) Both acts create a Legislative Council to serve in the interim, with the power to investigate, report and recommend; (2) Membership on the Council is composed exclusively of legislators; (3) The Council is given the right to compel the attendance of witnesses at its investigative hearings; (4) Members on the Council are entitled to their actual travel expenses.

We will discuss the constitutional features of the 1957 Act, first disposing of the general demurrer and the motion to quash, and will then discuss the appointment of the members of the Council.

Before discussing constitutional objections to the 1957 Act, certain basic principles should be recalled. They are: (1) That a statute must always be given a construction consistent with its validity if at all possible, School Dist. No. 12 v. Pondera County, 89 Mont. 342, 297 Pac. 498; (2) That all presumptions are resolved in favor of the validity and constitutionality of

legislative acts, Tipton v. Sands, 103 Mont. 1, 60 Pac. (2d) 662, 106 A.L.R. 474; and (3) That the State Constitution is a limitation upon the power of the legislature and not a grant of power to that body, State ex rel. Dufresne v. Leslie, 100 Mont. 449, 50 Pac. (2d) 959, 101 A.L.R. 1329.

Turning now to the first three grounds of attack brought by respondents' motion to quash: (1) That it contravenes section 5, article V of the Constitution, which provides per diem and mileage allowed each member of the legislative assembly and then states, "* * * shall receive no other compensation, perquisite, or allowance whatsoever"; (2) That the statute contravenes section 8, article V of the Constitution, which provides: "No member of either house shall, during the term for which he shall have been elected, receive any increase of salary or mileage under any law passed during such term"; and (3) That it contravenes section 26, article V of the Constitution, which provides: "The legislative assembly shall not pass local or special laws * * * creating, increasing or decreasing fees, percentages or allowances of public officers * * *."

The act in question provides only for reimbursement of actual travel expenses, and our courts have held that reimbursement of actual cash outlays does not amount to additional compensation. In Mitchell v. Holmes, supra, this court held that the 1953 Act similar to the 1957 Act, in these regards, was in violation of section 5, article V, and section 8, article V of the Constitution. With this we do not agree. This court in Mitchell v. Holmes, gave no reason for their holding nor did they cite any case authority.

The supreme court of Arizona in Earhart v. Frohmiller, 65 Ariz., 221, 178 Pac. (2d) 436, 438, in discussing the question whether expenses should be included within the term compensation as used in their constitution said: "When the State repays the legislators and their employees for their personal expenses, this does not constitute additional compensation but is merely a reimbursement for actual cash outlays necessarily in-

curred for subsistence while away from home and in performance of duty.''

The act in question, in concert with the constitution, specifically prohibits its Council members from receiving any compensation. In Collins v. Riley, 24 Cal. (2d) 912, 152 Pac. (2d) 169, 171, the supreme court of California said:

''It is also contended that the allowance to each legislator of $100 per month and mileage is an allowance 'for their services' and that the granting of actual expenses for subsistence constitutes an improper increase in the compensation provided for by section 23 of article IV. This contention, however, cannot be upheld, since the state's repayment of such expenses is not the giving of additional compensation, but merely a reimbursement to the legislator for actual cash outlays necessarily incurred for maintenance while away from his home in the performance of his duty. Accordingly, it has been held that 'traveling expense' is not compensation for services. Kirkwood v. Soto, 87 Cal. 394, 25 Pac. 488. * * *''

In Christopherson v. Reeves, 44 S.D. 634, 184 N.W. 1015, 1017, the South Dakota court said:

''* * * under the familiar principle that the Constitution is a limitation and not a grant, it follows that the Legislature, not being forbidden by the Constitution, possesses inherently the power to provide expense money, and the provisions of law recited in the petitioner's bill are not in conflict with this section of the Constitution. * * *

''We hold that chapter 279, Laws of 1921, was not an act providing compensation, but, on the other hand, that it provides expense money for a perfectly legitimate purpose. We hold that the word 'compensation,' as employed in section 3, art. 12, of the Constitution of South Dakota, is synonymous with salary, pay, or emoulment, and is intended to convey the idea of reward for, or compensation for official services; that it does not convey the idea of the repayment of expenditures allowable by law. It follows, as a matter of course, that the payment of expenses, not being prohibited by the direct language of the Con-

stitution nor any necessary inference, arising therefrom, is a valid and proper subject for legislative enactment." See, also, Manning v. Sims, 308 Ky. 587, 213 S.W. (2d) 577, 5 A.L.R. (2d) 1154; Scroggie v. Scarborough, 162 S.C. 218, 160 S.E. 596; Russell v. Cone, 168 Ark. 989, 272 S.W. 678.

It might be noted also, although we do not think it necessary for the purpose of this opinion, that service on the Council is a new duty, and as this court said in State ex rel. Donyes v. Board of Com'rs of Granite County, 23 Mont. 250, 253, 58 Pac. 439, 440:

"It is a well-settled principle of law that a provision such as is contained in the Constitution of this state, prohibiting any law increasing or diminishing the salary or emoulment of a public officer after his election or appointment, does not forbid the allowance of compensation for new and different services exacted from him during his term, where the statute imposing the duties also prescribes the compensation for their performance. The constitutional limitation * * * was intended to apply only to the salary and emolument to which the officer was entitled for services required of him by the law in force at the time of his election or appointment, unless the salary then provided was intended as compensation for all services which the officer, as such, might render."

We hold then that the act in question does not violate either section 5 or section 8 of article V of the Constitution. Nor does it violate section 26 of article V.

Next it is charged that the act contravenes section 7 of article V, which provides: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state * * *."

Again in Mitchell v. Holmes, supra, it was held that the 1953 Act, similar to this act in this respect, was in contravention of this section of the constitution. Then, Mr. Justice Anderson in his dissenting opinion stated as follows [128 Mont. 275, 274 Pac. (2d) 616]:

"In the case of State ex rel. Hamblen v. Yelle, 29 Wash. (2d)

68, 185 Pac. (2d) 723, 726, it is said: 'In 1933, No. 206, page 321, Mich. Laws of 1933, the legislature of the State of Michigan created by statute a legislative council which was directed to work during the interim between legislative sessions in the gathering of information for the use of the next ensuing legislature. Similar statutes have been enacted by the states of Connecticut (Gen. St. Supp. 1939, section 5e), Illinois (Ill. Rev. Stat. 1943, c, 63, section 33-42), Kansas (Gen. St. 1935, 46-301 to 46-312), Kentucky (KRS 7.010 et seq.), Maine (R.S. 1944, c, 9, section 23 et seq.), Maryland (Laws 1939 c. 62, Laws 1945, c. 971), Missouri (Mo. R.S.A. section 14737 et seq. [V.A.M.S. 23.010 et seq.]), Nebraska (R.S. 1943, section 50-401 et seq.), North Dakota (Laws 1945, c. 289), Oklahoma (74 O.S. 1941, section 451 et seq.), Pennsylvania (46 P.S. section 65 et seq.), Rhode Island (Pub. Laws 1939, c. 660, sections 220, 221) and Virginia (Code 1942, section 580a et seq.). In Virginia the committee is denominated "Virginia Advisory Legislative Council." The legislature of some of the states call the committee a legislative research committee, joint state government commission and committee on legislative research, but the committees were all created for the purpose of obtaining information for the use of the next session of the legislature. By constitutional or statutory provision, all of the states listed above, except Rhode Island, prohibit members of the legislature from filling a civil office created by the legislature during the term for which such legislators are elected. Const. Mich. art. 5, section 7; Const. Conn. art. 10, section 4; Smith-Hurd Stats. Const. Ill. art. 4, section 15; Laws Kan. 1931, c. 220, section 1; Const. Ky. sections 44, 165; Const. Me. art. 4, pt. 3, sections 10, 11; Const. Md. art. 3, section 17; Mo. R.S.A. Const. 1945, art. 3, section 12; Const. Neb. art. 3, section 9; Const. N.D. art. 2, section 39; O.S. 1941 Const. art. 5, sections 18, 23; P.S. Pa. Const. art. 2, section 6; Const. Va. sections 44, 45'.

"The court held in State ex rel. Hamblen v. Yelle, supra, that members of the legislature who were appointed to serve as members of a legislative council were not civil officers within the

meaning of the Washington Constitution, Art. II, section 13, which reads as follows: 'No member of the legislature, during the term for which he is elected shall be appointed or elected to any civil office in the state, which shall have been created, or the emoulments of which shall have been increased, during the term for which he was elected'. The court cited State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 Pac. 411, 418, 53 A.L.R. 583, which held that to be such an officer within the meaning of the constitutional prohibition, 'it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public'.

"The Act here in question establishes a council, the described functions of which, for the most part, consist of finding facts and the making of recommendations. Such powers cannot be said to constitute the exercise of sovereign powers. State ex rel. Herbert v. Ferguson, 142 Ohio St. 496, 52 N.E. (2d) 980. Sovereign power is defined as that power in a state to which none other is superior or equal, and which includes all the specific powers necessary to accomplish ends and purposes of government. Black's Law Dictionary, Deluxe Ed., page 1643.

"The case of State ex rel. Hamblen v. Yelle, supra, was cited with approval in State ex rel. Robinson v. Fluent, 30 Wash. (2d) 194, 191 Pac. (2d) 241, and again in the case of State v. James, 36 Wash. (2d) 882, 221 Pac. (2d) 482. See, also, Parker v. Riley, 18 Cal. (2d) 83, 113 Pac. (2d) 873, 134 A.L.R. 1405; In re Opinion of the Justices, 248 Ala. 590, 29 So. (2d) 10; Terrell v. King, 118 Tex. 237, 14 S.W. (2d) 786; State ex rel. Herbert v. Ferguson, supra, and other cases too numerous to cite."

With this statement from Mr. Justice Anderson's dissent in Mitchell v. Holmes, we agree.

The Supreme Court of California was asked to determine whether service by a legislator on the California Commission on Interstate Cooperation was prohibited by the California Constitution. The California court, first noting the significant change in the California Constitution, art. 4, section 19, which

enlarged the restriction from "any civil office" to "any office, trust or employment," held that service on the Interim Commission did not violate even the more stringent prohibition of the amendment to the California Constitution. The court in Parker v. Riley, 18 Cal. (2d) 83, 113 Pac. (2d) 873, 875, 134 A.L.R. 1405, said in this regard:

"The sweeping terms of the California constitutional provision thus prevent the appointment of a member of the legislature to any other position of trust or responsibility under the state. It may be noted, however, that the positions created by the statute here attacked lack certain elements usually associated with an 'office' or 'trust'. Thus, it is generally said that an office or trust requires the vesting in an individual of a portion of the sovereign powers of the state. Patton v. Board of Health, supra, 127 Cal. [388] at pages 394, 398, 59 Pac. 702, 78 Am. St. Rep. 66; Curtin v. State, supra, 61 Cal. App. [377] at page 390, 214 Pac. 1030; Leymel v. Johnson, 105 Cal. App. 694, 699, 288 Pac. 858; Couts v. County of San Diego, 139 Cal. App. 706, 712, 34 Pac. (2d) 812; State ex rel. Barney v. Hawkins, supra, 79 Mont. at page 520, 257 Pac. 411, 53 A.L.R. 583; State ex rel. Kendall v. Cole, 1928, 38 Nev. 215, 224, 148 Pac. 551; 53 A.L.R. 595, 602. The positions here created do not measure up to so high a standard. They involve merely the interchange of information, the assembling of data, and the formulation of proposals to be placed before the legislature. Such tasks do not require the exercise of a part of the sovereign power of the state. It may also be doubted whether the positions here conferred constitute an 'employment' by the state since no compensation is provided for the members of the commission. Yet, while distinctions might thus be drawn to show that membership on the commission is not within the scope of the constitutional prohibition, we prefer to place our decision on other more fundamental grounds.

"Assuming, but not deciding, that the positions created under this statute amount to an 'office, trust, or employment' under the state, we do not think the trust thus imposed upon selected

members of the legislature is in violation of the constitutional prohibition. The constitutional provision clearly implies that the prohibition is directed at the conferring of any other office, trust, or employment upon a member of the legislature. A member of the legislature is already an officer holding a position of trust under the state government. Where a statute merely makes available new machinery and new methods by which particular legislators may keep themselves informed upon specific problems, it cannot be said to have imposed upon them any new office or trust. The additional duties which rest upon the legislative members of the commission are identical in purpose and kind with those which they already perform. As was said in People v. Tremaine, 252 N.Y. 27, 41, 168 N.E. 817, 821, 'The duties of members of the Legislature may be enlarged without making a civil appointment or creating a new office, so long as the duties are such as may be properly attached to the legislative office * * *'. We hold, therefore, that the statute here attacked did not contemplate the conferring of any new office, trust, or employment upon the legislative members of this commission. Special Assembly Interim Comm., etc. v. Southard, supra, 13 Cal. (2d) [497] at page 499, 90 Pac. (2d) 304; Mulnix v. Elliott, 62 Colo. 46, 156 Pac. 216; Terrel v. King, 118 Tex. 237, 248, 14 S.W. (2d) 786.

''It must not be assumed, however, that legislative activities may be expanded indefinitely through the creation of separate agencies responsible primarily to the legislature. This sort of expansion would soon lead to a legislative usurpation of power inconpatible with the proper exercise of its lawmaking function. The Constitution forbids any such assumption of duties by the legislative branch of government, and a statute conferring a non-legislative office or trust upon members of the legislature would be clearly unconstitutional. But under the particular facts set forth where the responsibilities imposed are merely those of gathering information and making recommendations, we think the duties must be considered incidental to the lawmaking function. The creation of a separate commission in this

instance involved merely the use of new machinery in carrying out a trust already reposed in the members of the legislature. Under such circumstances the statute does not fall within the prohibition of the constitutional provision relied upon, and the contentions of respondent in this regard cannot be sustained.''

It will be seen at once that the California Constitution as regards this particular phase is more stringent than the Montana Constitution. A civil office requires the vesting in an individual of a portion of the sovereign powers of the state. We find that the act in question does not violate or contravene section 7 of article V.

It is also contended by the respondents that the act contravenes section 1 of article IV which provides, in general, for the separation of powers. Again, this court in Mitchell v. Holmes, held that the 1953 Act, similar to the 1957 Act in this respect, violated section 1 of article IV.

We do not agree with the reasoning of the majority of the court in Mitchell v. Holmes. Referring again to the California court in Parker v. Riley, that court said:

''The further contention is made by respondent that the statute creating the California commission on interstate co-operation is unconstitutional upon the ground that it violates section 1, article III of the California Constitution which provides: 'The powers of the government of the State of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted'. The duties imposed upon the commission, as we have stated, are those of investigation and consultation. The statutory plan culminates in the recommendations or proposals made by the commission from time to time. Such activity, in so far as it requires classification, may properly be described as the performance of duties which are incidental and ancillary to the ultimate performance of law-making functions by the legislature

itself. It is difficult to see how the general doctrine of political theory designed to apply to the basic and fundamental powers of government can be said to prohibit the exercise of such subsidiary and incidental duties. Respondent insists, however, that all the functions of government, whatever their importance, must be clearly allocated and classified as legislative, executive, or judicial. In the present instance, it is urged that certain of the duties performed by the commission are executive in nature and it is therefore argued that the doctrine of separation of powers prevents the exercise of such functions by members of the legislative branch of the government. If the duties were classified as legislative in nature, it is apparent that the same doctrine would prevent the exercise of such functions by the executive members of the commission. Whichever category is selected, under the theory thus advanced, the same result must be reached, that is, the statute must be held unconstitutional as violating the doctrine of separation of powers. * * *

"The separation of powers doctrine does not require that we classify these incidental governmental duties, and that we thereafter limit such activity to the particular branch of the government first selected. Such subsidiary duties may properly be performed by a variety of governmental agencies. In the instant case, the duty of correlating information and making recommendations is the kind of subsidiary activity which the legislature could perform through its own members, or which it could delegate to others to perform. Intelligent legislation upon the complicated problems of modern society is impossible in the absence of accurate information on the part of the legislators and any reasonable procedure for securing such information is proper. In re Battelle [207 Cal. 227, 277 Pac. 726, 65 A.L.R. 1497], supra; Phillips v. Riley, 6 Cal. (2d) 414, 57 Pac. (2d) 1308; Special Assembly Interim Comm., etc. v. Southard, supra. Nor does the Constitution prohibit the delegation of such incidental and subordinate tasks. As the court said in Attorney General v. Brissenden, 271 Mass. 172, 180, 171 N.E. 82, 86, where such duties were imposed upon the attorney gen-

eral, 'The ascertainment of facts in its essence is not a legislative function. It is simply ancillary to legislation. It may be accomplished in divers ways. While it may be done by the Legislature itself, it is a responsibility not infrequently placed upon committees and individuals. * * * Frequent illustrations of this practice also are found respecting permanent boards or commissions. * * * The ascertainment of pertinent facts as the basis for legislation is within the power of the law-making department of government. When a legislative body has a right to do an act, it must be allowed to select the means within reasonable bounds. It is not precluded from delegating incidental powers which it may exercise in aid of its primary functions. * * * Familiar methods are by appropriating the results of studies already made by itself or by others, by conducting an inquiry through a committee of its members, or by utilizing an existing commission or board to make and report the results of a research'. Courts have approved the creation of legislative agencies such as the commission created by this statute. Attorney General v. Brissenden, supra; Annenberg v. Roberts, 333 Pa. 203, 211, 2 A. (2d) 612; People v. Charles Schweinler Press, 214 N.Y. 395, 412, 108 N.E. 639, L.R.A. 1918A, 1124, Ann. Cas. 1916D, 1059; Terrel v. King, 118 Tex. 237, 14 S.W. (2d) 786; Mulnix v. Elliott, supra. The statute creating the California commission on interstate cooperation does not, therefore, violate either of the constitutional provisions relied upon by respondent.''

With the reasoning of the California court heretofore quoted, we agree. We hold that the statute in question does not violate section 1 of article IV. See, also, State ex rel. Hamblen v. Yelle, 29 Wash. (2d) 68, 185 Pac. (2d) 723; Branham v. Lange, 16 Ind. 497; Tipton v. Parker, 71 Ark. 193, 74 S.W. 298, State ex rel. Robinson v. Fluent, 30 Wash. (2d) 194, 191 Pac. (2d) 241.

The next contention made by the respondents is that the act contravenes section 5 of article V, which provides in part: ''No

session of the legislative assembly, * * * shall exceed sixty days."

The respondent raises the question involved in his brief in this manner, "* * * how can the legislative assembly of Montana, specifically limited in the exercise of its legislative powers to sixty days by section 5, article V of the State Constitution, by enacting a statute project its life beyond the date the constitution says it must die? How, if the power to exercise the legislative function ceases upon adjournment, sine die, can a subsidiary power continue to live? How can 'the limb exist after the body has perished', or the 'agent act after his principal is extinct?' "

The answers suggested by the respondents to these questions would indicate that no possible function of a legislature can occur after its adjournment. Their answers would indicate that even the assembly of the journals, the production and publication of the statutes as passed, the storage of furniture, the final payment of staff of the legislature, the return trip home, and even the thought processes of the individual legislators should cease. This we do not believe was the intent of the framers of the Constitution.

In State ex rel. Bennett v. State Board of Examiners, 40 Mont. 59, 104 Pac. 1055, 1057, this court said:

"For ordinary purposes, the Legislature may not convene oftener than once in two years. It can be convened by the governor at other times for extraordinary purposes. (Const., section 6, art. 5, section 11, art. 7). It is vested with the power, and is required, to provide the necessary revenue for the support and maintenance of government, and for this purpose to levy a uniform rate of taxation upon all property in the state, except such as is exempted by express provision of the Constitution itself. (Const., section 1, art. 12). Its power in this behalf is to be exercised in regular session and not at other times, because provision for its support and maintenance is one of the ordinary functions of government. That this power should so be exercised is clear from the fact that the legislative body must con-

vene only at stated times, except when called in session by the governor to meet unforeseen emergencies.''

With the possible exception of Mitchell v. Holmes, supra, there is to our knowledge no decision of any court denying to the legislature the power to create by statute a committee to serve in the interim between sessions of the assembly. On the contrary, all courts have uniformly held that investigative power exists in the legislative branch which may be exercised after final adjournment as well as during the session. It is true that in many of the state court decisions concerning this subject, the state involved did not have a constitutional limitation as to time for the legislature to act. However, in the State of Washington, a similar constitutional restriction on the length of legislative sessions is had. The Washington court has been called upon twice to consider the validity of the Interim Committees, first in State ex rel. Hamblen v. Yelle, supra, and again in State ex rel. Robinson v. Fluent, 30 Wash. (2d) 194, 191 Pac. (2d) 241, 245. In this latter case the Washington supreme court, in an original proceeding for a writ of mandamus to compel the state treasurer to pay a warrant drawn in payment of expenses of the relator for services rendered as a member of the Joint Legislative Council on Un-American Activities, held:

''The question whether the legislature may project its investigatory function into the interim and until the next session of the legislature is foreclosed by our opinion in State ex rel. Hamblen v. Yelle, 29 Wash. (2d) 68, 185 Pac. (2d) 723, in which we held that by statute a legislative committee may be created and authorized to sit during the interim between sessions for the purpose of making necessary investigations for the ascertainment of such facts as are a necessary predicate for the enactment of laws.

''The powers of such committees are not restricted to investigations upon matters pertinent to legislation only. Legislative committees may be created to investigate into any subject legitimately within the scope of the functions, powers, and

duties of the legislature, and to secure information necessary to the proper discharge thereof. See 49 Am. Jur. 260.''

Concerning legislative functions carried on during the interim period between sessions, a somewhat analogous situation occurs in the field of rate making. In Billings Utility Co. v. Public Service Comm., 62 Mont. 21, 203 Pac. 366, 368, this court in the year 1921 had this to say:

''It is a well-settled law that rate making is purely a legislative act, and as such the power of courts is circumscribed and restrained in interference with determinations reached within the scope of legislative authority.

''The legislature itself has the undoubted authority to regulate public utilities, and by means of a duly constituted Commission it operates through its administrative medium. 'The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind'. [Citing cases].''

The rate-making functions of the public service commission in Montana and various regulatory commissions throughout the nation has long been recognized by the courts. This rate-making function goes on throughout the year and during the interim periods between regular sessions of the Legislature. The function in rate-making is expressed in the above quotation by this court as a legislative one. To say that this violates the constitutional provision against the legislative functions after the sixty day period would seem to be a strange situation to be posed at this time. It might be suggested that the legislature in this particular situation, that is, the Legislative Council to investigate, study and recommend legislative proposals, might accomplish the same purpose by the establishment of a legislative bureau, an administrative office. See Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, 213, 7 Pac. (2d) 919.

Apparently under the rate-making processes prescribed above, such an administrative function could be accomplished. It would seem strange that a legislative function could be carried on

through an administrative body and not by members of the legislature themselves.

Another situation suggested is that various administrative boards, commissions, and bodies in this state and throughout the nation, both state and federal, have been delegated authority by law to establish rules and regulations for the conduct of their functions. These rules and regulations have the force of law, and it would be a strange situation indeed to say that in Montana a rule and regulation passed by an administrative board having the force of law is the exercise of the legislative function, and therefore not valid because done in the interim period between legislative meetings.

Historically Interim Committees have been resorted to as early as the pre-Civil war era for the purpose of conducting studies in preparing legislation for consideration at the next session of the legislature. Today, so far as this court's examination goes, such councils exist in thirty-four states where, whenever the question of their constitutionality has arisen, they have been uniformly held to be constitutional in all respects. For sample cases see: In re Opinion of the Justices, 248 Ala. 590, 29 So. (2d) 10; Dickinson v. Johnson, 117 Ark. 582, 176 S.W. 116, L.R.A. 1915E, 496; Goffin v. Donelly, 6 Q.B.D. 307, 50 L.J.Q.B. 303; Application of Withrow, 176 Misc. 597, 28 N.Y.S. (2d) 223; State ex rel. Herbert v. Ferguson, 142 Ohio St. 496, 52 N.E. (2d) 980; Blakeslee v. Carroll, 64 Conn. 223, 29 A. 473, 25 L.R.A. 106; Greenfield v. Russel, 292 Ill. 392, 127 N.E. 102, 9 A.L.R. 1334; Bank v. Worth, 117 N.C. 146, 23 S.E. 160; Caldwell v. Carfer, 61 W.Va. 49, 55 S.E. 910, 10 L.R.A., N.S., 172; and People ex rel. Hastings v. Hofstadter, 258 N.Y. 425, 180 N.E. 106, 79 A.L.R. 1208.

The respondents urge that the rule of stare decisis should ▮ be applied in order to uphold the decision of this court in State ex rel. Mitchell v. Holmes. The rule of stare decisis is not so imperative or inflexible as to preclude a re-examination of that case. One reason to blindly follow an erroneous decision is when property rights may be affected by its change. Even then,

this court has reversed decisions making the new decision applicable only to the future. Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, 7 Pac. (2d) 919; Continental Supply Co. v. Abell, 95 Mont. 148, 24 Pac. (2d) 133, and other Montana cases.

No such reasons appear here. Therefore, we expressly overrule all that is said in Mitchell v. Holmes contrary to that said here.

The demurrer filed herein is overruled and the motion to quash denied.

By the answer of the respondents, the issue of the validity of the appointment of the relator is made. The respondents contend that the appointment of the relator to the Legislative Council was invalid. The relator's affidavit and application for writ of mandamus has alleged that the relator, Ben E. Berg, Jr., Earl Moritz, Lloyd Barnard, James Wood, Jr., George D. Howard, Bertha E. Streeter, Hugh Cumming, William R. Mackay and Robert A. Durkee, had been duly appointed, qualified and acting members of the Legislative Council. The respondents by their answer denied that the relator and the others named were duly appointed, qualified and acting members of the Council. The facts concerning the appointment of the senate members of the Council were stipulated to for the purpose of this action. There is no contention made but that the appointment of the house members of the Council was properly made and recorded by the speaker of the house. The act in question, as heretofore previously set out, gave the power of appointment in section 1 thereof. So far as applies here, the pertinent part of that section is as follows: "* * * and six (6) members of the State Senate who shall be appointed by the committee on committees of the State Senate * * *." The language of the bill is clear that the six members of the Senate would be appointed by the Committee on Committees of the Senate. It is also apparent that no particular formality with respect to the appointment of the members of the Council was required, and it is also apparent that the appointing power is reposed solely in

the Committee on Committees. No concurring action by any other officer or body is required.

The fact situations stipulated to, which brings the problem before the court, is that the Committee on Committees made its report to the Senate in the following language:

"Mr. President: We, the majority of your Committee on Committees, pursuant to authority granted under House Bill No. 46 to appoint 6 members of the Montana State Senate to serve with 6 members from the House of Representatives as a Legislative Council, respectfully report and recommend that the following Senators be appointed to said Legislative Council: James, Hagenston, Durkee, Streeter, Mackay, Moritz, signed majority of Committee on Committees, Cotton, Anderson (Lincoln)."

Following this their appears in the Senate Journal the following:

"Moved by Senator Anderson (Lincoln), duly seconded, that the foregoing report be adopted.

"Senator Mackay asked that his name be withdrawn from the Committee report. By unanimous consent, Senator Mackay's name was withdrawn without any objection.

"Substitute motion by Senator Cotton, duly seconded, that the committee report be amended and that Senator Alley's name be substituted for Senator Mackay's name, failed of passage.

"Senator Mahoney raised a point of order stating that House Bill No. 46 calls for a 6 man council, as the report now stands at the present time there are only 5 men on the committee and therefore invalid.

"President Cannon overruled Senator Mahoney's point of order.

"Senator Cotton requested that the majority report be read again.

"Senator Anderson (Lincoln) asked that the majority report of the Committee on Committees appear on the Journal so the requirements of the statute will be fulfilled.

"Senator Anderson (Lincoln) requested that his original mo-

tion to adopt the majority report of the Committee on Committees be withdrawn.

"Senator Mahoney read Rule VIII, Sub-Section 1:

" '1. Committee on Committees. All committees of the Senate, special or standing, and all joint committees on the part of the Senate, shall be selected by a committee of three (3), to be elected by the Senate (unless otherwise ordered), the selection so made by said committee to be reported to the Senate and to be effective only when ratified by the Senate'.

"The chair ruled that he would accept the majority report of the Committee on Committees."

Thus here presented is the question: Was an appointment of the relator and the other members named from the Senate made as provided by the statute, or were the appointments not made because it was not ratified by the Senate?

The respondents' position is that the failure of the Senate body as a whole to adopt the Committee on Committees' report resulted in a complete failure of the appointment. With this contention we cannot agree. The Senate's rule 8, which was attempted to be applied, does not control over a statutory enactment of both bodies of the legislature as approved by the governor. The statute in clear and unambiguous language gave the power of appointment to the Committee on Committees. The Committee on Committees, while it did not make its appointment of the members in language saying, "We hereby appoint the following," it did say, "The Committee on Committees pursuant to authority granted * * *, respectfully report and recommend that the following Senators be appointed to said Legislative Council * * *."

While the language of the Committee on Committees' report ▇ leaves much to be desired in clarity on the making of appointments, under the only authority given for the power of appointment of senate members on the Legislative Council, we hold that appointments were made. The Committee on Committees had its duty to perform and when it filed its report to the senate body for the purpose of making a record, its function

was completed. It did not need nor could the senate body give, either its approval or disapproval of the appointments. To hold otherwise would be to say that the senate body could change the intent of a bill passed by both the House of Representatives and the Senate and approved by the governor. If the senate body had wished to express its intent otherwise, it could very easily have amended the bill during its consideration, to state that the appointment of the members of the Legislative Council was subject to confirmation by the Senate. This it did not do.

It is elementary that the authority of the legislature to dele- gate power of appointment is present. 42 Am. Jur., Public Officers, section 95, page 953; 67 C.J.S., Officers, section 29, page 158.

In 67 C.J.S., Officers, section 30, pages 158, 159, the general rule is stated as follows: ''The power to appoint to office carries with it discretion in the exercise of the power, and a valid appointment requires a choice by the appointing power of the person appointed. While the appointing power may listen to the recommendation or advice of others, the selection must finally be the act of the appointing power; and an appointment made by lot is invalid. There must be an intention on the part of the appointing officer to place the person of his choice in the position to be filled, but an intention to appoint may be implied.''

Thus, in the instant case, however clumsily or with whatever thought in mind the Committee on Committees may have had, the choice of members for membership on the Legislative Council was made. Compare Hubert v. Mendheim, 64 Cal. 213, 30 Pac. 633; People ex rel. Kresser v. Fitzsimmons, 68 N.Y. 514; People v. Gulvin, 164 App. Div. 768, 149 N.Y.S. 117.

It is not necessary to examine the Senate Journal to determine intent, and we do not rule on whether such an examination would be proper. The plain meaning of the words used is sufficient. State v. Cudahy Packing Co., 33 Mont. 179, 82 Pac. 833.

Another question urged is whether Senator Mackay is a

member of the Legislative Council in view of his withdrawal from the Council with the unanimous consent of the senate body. The answer to this question is not of moment to this opinion. The Council exists. The act provides for the method of filling vacancies under another delegated power. The Council's administration can take care of that situation or of any possible future vacancy, should one occur. Additionally it is stipulated that Senator Mackay attended and participated in the organizational meeting of the Legislative Council and assumed and presumed to act as a member of the Council, and that the members of the Council assumed and presumed that he is a member thereof. Whether or not any formality attended this seating of Senator Mackay does not appear, but as heretofore stated, it is unimportant to this decision.

In view of the foregoing discussion, we must next consider the question of attorney fees. The relator has by his petition pleaded damages by way of attorney fees. Attorney fees are allowable in such cases, R.C.M. 1947, section 93-9112; State ex rel. O'Connor v. McCarthy, 86 Mont. 100, 282 Pac. 1045; State ex rel Lynch v. Batani, 103 Mont. 353, 62 Pac. (2d) 565; State ex rel. McCarten v. Corwin, 119 Mont. 520, 177 Pac. (2d) 189.

Attorney fees in the amount of $500 are hereby allowed.

Let the peremptory writ issue. It is so ordered.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICES BOTTOMLY and ADAIR do not concur in this opinion, and reserve the right to later file a dissenting opinion stating their views herein.